## JOSEPH ANTHONY TOMOLILLO *v.* STATE OF MARYLAND

[No. 332, September Term, 1967.]

*Decided August 14, 1968.*

The cause was submitted to MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Norman N. Yankellow,* with whom was *J. Frank Boyd* on the brief, for appellant.

*Dickee M. Howard, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Thomas A. Rymer, State's Attorney for Calvert County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The appellant was found guilty by a jury in the Circuit Court

for Calvert County of grand larceny and sentenced to imprisonment for a term of ten years. After a hearing on an application for review of sentence the sentence was vacated and he was resentenced to imprisonment for a term of four years.

The appellant claims that his arrest was illegal and that, therefore, a shirt and jacket were improperly admitted in evidence against him as obtained by an unreasonable seizure incident to the arrest.

George Griffin testified that about 4:00 A.M. on 6 May 1967 he was awakened by the sound of a car starting. His Pontiac automobile, with the keys in the ignition, was parked in the driveway on his premises and, looking out the window, he saw the car come out of the driveway and "almost hit the garage across the street." He hollered and observed that the driver was a man with a "thin face." The car raced off. He called the police and gave them a description of the car. About 20 minutes later he was told the car had been found "over to Kline's Store" about a mile from his house. He went there and "all over the sun visor, both sides of the door was soot. It was all over the sun visor and the door and everywhere, there was soot all over the dash board, this soot—that I thought was from a burlap bag, because there was pieces of this coat or whatever it was." A police officer on the scene picked up the pieces of the burnt fabric and put them in a box. A Dodge four door cab truck was also parked in his driveway and soot and the same burnt fabric was in the truck. A flashlight had been taken from the truck. The ignition keys had not been left in the truck. The soot and burnt fabric had not been in either the truck or car when they had been parked in the driveway several hours earlier. The car was valued at $3500 when it was purchased in December 1964.

Mrs. Jean McGahey who lived across the street and two houses from Griffin owned a truck which was parked in front of her house. About 8:30 A.M. on 6 May she was awakened by a neighbor who said her truck was on fire. It was full of smoke. The back of the seat was smoldering and a neighbor had to take the seat out and turn the hose on it to put out the fire. Two flashlights were in the truck and one of them was the one taken from Griffin's truck.

Trooper J. L. Cawthorne of the Maryland State Police testified that he received a radio message about 4:31 A.M. on 6 May that a 1964 Pontiac car had been taken from the residence of Griffin. He drove toward the Griffin residence and as he passed Kline's Store a police cruiser was stopped by a 1964 Pontiac. The engine of the Pontiac was warm and inside were pieces of burnt fabric and smudges were on the seat, headliner and sun visor. As he was collecting pieces of the burned material, he observed "a dark figure," wearing a dark coat, run across the road about 250 feet away into a school play area. The officer went to the area but found no one. The pieces of burnt material were later taken to the F.B.I. Laboratory. The trooper and other police officers started "a general patrol and canvas" of the area. About 25 minutes later Cawthorne observed "the figure again" about one and a half blocks from the place where the car was recovered, standing under a street light. It was a white male wearing a dark coat and light colored pants. "The instant he spotted my headlights" he ran down the street and then between two houses. The officer called on the radio for help and pursued the man who ran into heavy weeds. The officer called to him to stop but the man escaped, running into the Chesapeake Beach Amusement area. The man was "of medium height and a little on the slender side." The police closed off the Chesapeake Beach Park area and as it got lighter checked all the buildings in the Amusement area to no avail. Cawthorne gave the description of the man to Special Policemen who worked in the Amusement Park—a white male, dressed in a dark jacket and light pants who "may have some burnt clothing on him." About 9:30 A.M. he received a call at his home that a man was in a restaurant near the Amusement Park answering the description given and wearing a jacket with a burn in it. He went to the restaurant and saw the appellant. There was a burnt hole about 4 or 5 inches in diameter in the back lower portion of his jacket. The officer arrested him and at the jail took his jacket and shirt and later delivered them to the F.B.I. Laboratory. The officer learned about the fire in Mrs. McGahey's truck and took samples of the burnt fabric from it which were later delivered to the F.B.I.

Laboratory. He also obtained pieces of burnt fabric from Griffin's truck and they were later delivered to the F.B.I.

We have no difficulty in determining that the arrest was legal. At the time of the arrest the officer knew that the felony of grand larceny—the stealing of the automobile—had been committed. He had reasonable grounds to believe that the appellant had committed it for the appellant answered the description as to build and clothing of the person he had seen and pursued near the place where the car was recovered and there was a burnt hole in the back of his jacket which could account for the burnt fabric found in the car. See *Simms v. State*, 4 Md. App. 160; *Boone v. State*, 2 Md. App. 479. The appellant urges that even if the officer had probable cause to believe a crime was committed that crime was a misdemeanor, because, he says, he was convicted of the larceny of an automobile proscribed by Md. Code (1967 Repl. Vol.), Art. 27, § 348. We think it clear that the appellant was charged and convicted under the general larceny statute, Code, *supra,* Art. 26, § 340. But in any event, the crime of which an accused is subsequently charged or convicted is not controlling in determining whether the arresting officer had probable cause to believe that a felony was committed. *Simms v. State, supra,* 167. The arrest being legal, the contention fails.

A special agent of the F.B.I., an expert in microscopic comparison and identification of hairs and fibres, textile materials and related types of evidence, to whom the jacket and shirt and samples of burnt fabric were delivered, testified that it was determined by both the Sodic Sodium test and microscopic examination that a fragment of partially charred fabric taken from the stolen car (State's Exhibit No. 1) was a piece of "plainly woven synthetic fabric, composed of black viscose mild tone fibres. A similar type examination was conducted with respect to the fibres composing the jacket and the fibres composing the fabric of the shirt and determined that the fibres composing the shirt was just the same microscopic characteristics, also the fabric composing the shirt exhibited the same type of weave as the fragments in State's Exhibit No. 1 * * * The cellulosic test checked out positive, to say the fibres in the shirt were identified as being the viscose as were the fibres

in State's Exhibit No. 1." Also the color was compared by means of a comparison microscope. The conclusion of the witness, based on the results of the tests, was that "the fabric contained in State's Exhibit No. 1 could have originated from the shirt." On cross-examination he said that he could not say that the "piece of partially charred fabric specifically originated from this shirt. I can merely state that it could have." But the fabrics were "identical * * * With respect to their microscopic and chemical characteristics and also to the weave pattern, they are identical."

The appellant contends that the testimony of the expert "did no more than point out the possibility" that the burned material taken from the stolen automobile came from appellant's shirt and that it was therefore inadmissible. The trial court is vested with sound discretion relating to the reception or rejection of evidence, *Koprivich v. State,* 1 Md. App. 147, and we find no abuse of discretion here. "It is well settled that evidence need not be positively connected with the accused or the crime committed in order to render it admissible; it is admissible where there is a probability of its connection with the accused or the crime, the lack of positive identification affecting the weight of the evidence, rather than its admissibility." *Woodell v. State,* 2 Md. App. 433, 436. See *Stewart v. State,* 1 Md. App. 309. We think that the challenged testimony, at the least, showed a probability that the burnt fabric found in the car came from the appellant's shirt and that it was properly admissible. That the expert witness could not say that it positively came from the shirt went only to its weight, a matter for the jury.

*Judgment affirmed.*