JOHN MABANE *v.* STATE OF MARYLAND

[No. 429, September Term, 1968.]

*Decided September 10, 1969.*

The cause was submitted to MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*G. Denmead LeViness* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Stephen Montanarelli, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

The appellant, John Mabane, was convicted by a jury in the Criminal Court of Baltimore, Judge J. Gilbert Prendergast presiding, of robbery. He was sentenced to serve ten years under the jurisdiction of the Department of Correction.

The appellant presents the following questions:

1. Whether his arrest and the subsequent seizure of the victim's purse from his house were legal?
2. Whether there was a constitutionally impermissible pre-trial confrontation of the appellant by the victim?
3. Whether the lower court erred in its ruling on appellant's "motion for appropriate relief?"

I

## ARREST AND SEIZURE OF PURSE

On the morning of June 17, 1968, Roberta Marcano left a bank in East Baltimore carrying $83.00 in currency and $4.00 in coins in her straw handbag. She was accosted by a man who knocked her to the ground, kicked her, and forcibly took her handbag from her, leaving her holding only the broken handle to the bag. Mrs. Marcano chased the robber for several blocks; she was joined in her chase by two men, one of whom was a Mr. Wessil. The pursuers saw the robber enter a certain house on Dallas Court. The police, in response to a call, arrived within five minutes after the pursued man entered the house. Officer Ronald Burdynski, the first police officer on the scene, testified that he "received information from Mr. Wessil that he chased the man who took a woman's purse into a house." He stated that Mr. Wessil said to him, "I followed the man who took the purse. I know what house he went into." Officer Burdynski parked the police car and he and his partner, Officer Ronald Michaels, got out of the car. Mr. Wessil pointed to 234 South Dallas Court and said to Officer Burdynski, "This is the house." Officer Burdynski went to the house and rapped on the door. He heard a voice from inside the house say, "Who is it?" The officer responded, "The Police. Please come to the door." The voice said, "Wait a minute." At this point the officers waited, then rapped several more times on the door. When no one admitted them, one of them reached through a broken window pane and opened the door. The officers entered the house and found no adult men in the house except the appellant, who was in a bedroom. The officers arrested the appellant, took him to the outside doorway and turned him over to police officers who had arrived while Officers Burdynski and Michaels were in the house. Officers Burdynski and Michaels then reentered the house. In a washing machine in the kitchen, Officer Burdynski found Mrs. Marcano's handbag. The handbag was admitted into evidence over objection.

The appellant's contention and argument, verbatim, are as follow:

> ## "THE APPELLANT'S ARREST WAS ILLEGAL AND THE SUBSEQUENT SEIZURE OF THE PURSE UNLAWFUL.
>
> "The appellant contends that the police had no right to enter his home by reaching in and unlocking the door. He contends that absent an invitation to come in (which they lacked) the police should have secured an arrest warrant and a search and seizure warrant. Appellant contends that the police were not in hot pursuit but were called to the scene after commission of the alleged crime. He contends that Mrs. Marcano and Mr. Wessil were the ones in hot pursuit. Appellant contends that the correct police procedure would have been for officers to have remained at his home guarding all doors, while the proper warrants were obtained. He contends that this illegal entry of his home by the police violated his right to due process of law."

At the outset, it is clear that appellant makes no claim that the police lacked the requisite probable cause to arrest him. With respect to the arrest he contends only that the police should have obtained an arrest warrant and that they should not have entered as they did without a warrant. With respect to the search and the seizure of the purse, he contends only that the police should have first obtained a search and seizure warrant.

Since there existed probable cause for appellant's arrest, the mere absence of an arrest warrant would not vitiate the arrest nor violate appellant's rights. See, e.g., *Duckett v. State,* 3 Md. App. 563, 572 (1968).

It is undisputed that the police officers entered the house in which appellant was arrested by reaching through an aperture and opening the door by means of an inside handle. The rule has been stated in Maryland that "a police officer lawfully seeking to arrest an indi-

vidual in a house . . . either by authority of an arrest warrant or under circumstances making a warrant unnecessary, must give proper notice of his purpose and authority, and be denied admittance, before he can use force to break and enter to effectuate the arrest." *Berigan v. State,* 2 Md. App. 666, 669 (1968) ; *Henson v. State,* 236 Md. 518, 521-22 1964.[1] The appellant has not contended that the police officers failed to sufficiently announce their identity and purpose or that the officers were not denied entry to the house. In such a case the rule would authorize the officers to break and enter the house to effect the arrest, regardless of the presence or absence of an arrest warrant.

Mrs. Marcano's purse was found during a search of the house. The search, as an incident of the arrest, could be conducted without a warrant. E.g., *David v. State,* 1 Md. App. 666, 669-70 (1967).[2] As the appellant does not on this appeal complain about the scope of the search, it is not necessary for us to express our views on that point. See *Warden v. Hayden,* 387 U. S. 294.

## II

## IDENTIFICATION OF APPELLANT

At trial the victim, Mrs. Marcano, testified that after Officers Burdynski and Michaels entered the appellant's house, she entered also. The officers told her to leave, to "get out," and she immediately exited the house. She then sat on a step in front of the house. When the officers brought the appellant to the doorway of the house to

---

1. Questions could conceivably arise, in the circumstances here present, whether the police "used force" to break and enter, and whether it is necessary that the police "forcefully" break and enter in order to render applicable the above quoted rule. In the instant case we have assumed that sufficient force was used to effectuate the breaking and entry and that the rule is applicable. See *Sabbath v. United States,* 391 U. S. 585 (1968) ; *Jones v. State,* 2 Md. App. 356, 360 (1967).

2. It is to be noted that *Chimel v. California,* 395 U. S. 752, 37 U.S.L.W. 4613 (June 23, 1969) has no application here, since the instant search was conducted prior to that decision. See *Scott v. State,* 7 Md. App. 505.

turn him over to other police officers who had arrived at the scene, Mrs. Marcano "looked up and told him [one of the officers] that that [was] him," meaning that the appellant was the man who had robbed her. The appellant moved to strike Mrs. Marcano's testimony as to the identification at the house as being, in effect, a proscribed one-man lineup. That motion was denied. Mrs. Marcano also made a positive in-court identification of appellant, to which no objection was made.

Upon appeal the appellant contends that the motion to strike should have been granted on the ground that the "confrontation" was illegal under the doctrine of *United States v. Wade,* 388 U. S. 218 (1967) ; *Gilbert v. California,* 388 U. S. 263 (1967) ; and *Stovall v. Denno,* 388 U. S. 293 (1967).

On the record before us, we think it clear that there was no pre-trial "confrontation" within the ambit of *United States v. Wade, supra,* and *Gilbert v. California, supra.* It certainly was not a lineup or a one-man show within the usual use of those words. Here the appellant was simply observed by the victim when, shortly after the crime had been committed and immediately after appellant's apprehension by the police, the arresting officers brought him to the door of the house to turn him over to other officers who had just arrived. There is no indication that Mrs. Marcano's view of the appellant occurred at the direct instance of the police. Compare *Palmer v. State,* 5 Md. App. 691 (1968). Instead, there is undisputed testimony that the officers told Mrs. Marcano to leave the house and that they did not know where she then went to until they brought the appellant to the door, at which time Mrs. Marcano was on the front steps. It appears to us that this case is similar to *Smith v. State,* 6 Md. App. 23 (1969) in that the manner in which the victim viewed the appellant was more happenstance than design. In *Smith v. State, supra,* we held that the viewing there was not a "confrontation" within the meaning of *Wade.* The instant case is similar in relevant particulars, and we hold that the viewing of appellant by Mrs.

Marcano under the circumstances described above there was no pre-trial confrontation within the ambit of *Wade* and *Gilbert, supra.* There was thus no error in denying the motion to strike.

### III

### MOTION FOR APPROPRIATE RELIEF

Approximately one month before trial the appellant, who was then in the Baltimore City jail, filed a "motion for appropriate relief" in the Criminal Court of Baltimore. The appellant alleged that he knew of two women who could testify to his innocence, although he did not know their names or addresses. The motion requested that bail be reduced to a figure which he could afford or, in the alternative, that he be taken from jail in civilian clothes to the Broadway Market on each of four consecutive Saturdays in order that he have an opportunity to find the women. The motion was denied by Judge Albert Sklar after a hearing. Appellant and the State agree that the grant or denial of the relief requested was a matter within the sound discretion of the lower court. Under all of the circumstances of this case we are unable to say that the original $7500 bail figure was excessive [3] or that Judge Sklar abused his discretion in refusing to reduce it. Also, Judge Sklar did not abuse his discretion in denying the alternative relief sought. The identity of the women was unknown, and their whereabouts a matter of conjecture. In addition, through the testimony of Mrs. Marcano and the appellant at trial, the jury was apprised of the statements made by the unknown women to Mrs. Marcano and to the police at the time of appellant's arrest. Under these circumstances we find here no substantial prejudice to the appellant, and no abuse of discretion.

*Judgment affirmed.*

---

3. The appellant states in his brief that his "bail before trial was more or less the usual bail for robbery."