## ROBERT JOHN HIMMEL *v.* STATE OF MARYLAND

[No. 310, September Term, 1969.]

*Decided April 29, 1970.*

396

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Frank B. Cahn, II,* for appellant.

*Francis X. Pugh, Assistant Attorney General,* with
whom were *Francis B. Burch, Attorney General, Rich-
ard J. Kinlein, State's Attorney for Howard County,* and
*Charles E. Wehland* and *Richard B. Talkin, Assistant
State's Attorneys for Howard County,* on the brief, for
appellee.

THOMPSON, J., delivered the opinion of the Court.

Robert John Himmel, the appellant, was convicted of
daytime housebreaking under Art. 27, § 30 (b) of the
Md. Code by a jury in Howard County, Judge T. Hunt
Mayfield presiding. A sentence of eighteen months was
imposed.

On June 7, 1968, two strangers went to the home of
Walter Wilson in Howard County, Maryland, asking di-

rections to a Dr. Koukoulas' home. Although Wilson did not recognize the name of the doctor, he indicated to the two strangers, later identified by photographs to be appellant and one Robert Lee Sizemore, that a Dr. Matayas Relle lived about four hundred yards from the Wilson residence. He said both men were wearing slacks and tee shirts. Becoming suspicious, he drove past the Relle residence where he saw the appellant's dark colored Ford parked on the edge of the lawn. He also saw one man in the back yard and the other standing at the front door. The storm door was open but the main door to the house was closed. Wilson wrote down the license number of the car and later reported it to the police.

On June 7, 1968, at approximately 11:30 A.M., Anne Marie Relle, wife of Dr. Matayas Relle, left her home. When she returned about 1:30 P.M. that same day, the entire house had been ransacked, but she noticed no evidence indicating the method of entry. She listed the items missing from her house, including one gold Germinal Voltaire lady's wrist watch with edgings. Her testimony as to securing the home when she left was as follows:

"Q. And upon your return, what, if anything, unusual did you find?

"A. Well, the first thing unusual was that, I walked up through the basement, because the garage is on a lower level with the basement, and the kitchen door was locked between the basement and the kitchen, which could not have been locked if I went down that way, which I did—there are three doors . . . .

"Q. Uh huh.

"A. . . . . and the garage door, naturally, I locked as I left with the car, but the door between the basement and the kitchen was locked and I knew I hadn't locked it. So, immediately, I had an idea something was unusual and I stepped in the house and found everything was ransacked.

"Q. All right. When you left the house you went down through the kitchen into the garage?

"A. Yes. No. Through the kitchen to the basement then in, through another door into the garage.

"Q. And did you lock that door when you left the house?

"A. No. The garage door was locked, however, and that couldn't be opened without a key.

"Q. I see. Now, what cond—when you left the house, in what condition was the house?

"A. I left it the way I usually leave it. . . .

"Q. Was this neat and orderly?

"A. . . . everything was straight and neat. Yes."

* * *

"BY THE COURT:

"COURT: Mrs. Relle, as I understand, that when you returned, or when you left the house on this day of June of last year, were all the doors of the house, the exterior doors, locked to your knowledge?

"A. Yes.

"COURT: And when you returned you found the door leading into the kitchen from the garage area unlocked?

"A. Yes. No —

"COURT: You say —

"A. No, it was locked.

"COURT: Locked.

"A. Because when I go down —

"COURT: It had been unlocked when you left?

"A. Yes.

"COURT: And the exterior garage doors were locked?

"A. Yes.

"COURT: Now did you, other than your observation of the ransacking in the house, did

you observe anything unusual about the doors, the exterior doors or windows?

"A. No."

Detective John Hannan of the Anne Arundel County Police Department had appellant under observation on June 7, 1968. Hannan observed the appellant, dressed in slacks and a tee shirt, leave his home approximately 9:30 A.M. in a dark green Ford and pick up Robert Sizemore, who also wore slacks and a tee shirt. Detective Hannan then lost sight of appellant and Sizemore and did not see them again until about 2:15 P.M.

Appellant was arrested in his home on June 25, 1968, by Detective Hannan, pursuant to an arrest warrant. The arresting officer proceeded to search appellant's residence, seizing many items. All of the items seized were suppressed, pursuant to pretrial motion and hearing, except a set of keys and a white jewelry box which Hannan said contained several watches including a gold Germinal Voltaire watch. Both the jewelry box and the keys were in plain view, and the officers recognized the jewelry box as similar to one stolen in another crime.

The entire case for the defense was the testimony of a watchmaker, duly qualified as an expert, who stated this particular watch could not be distinguished from any other watch of the same make and design.

## I   Sufficiency of the Evidence

Appellant first contends there was insufficient evidence to sustain the conviction of daytime housebreaking. He cites 12 Corpus Juris Secundum, *Burglary*, § 3, at 670 to the effect that in order to constitute a breaking, the actions of the defendant must have been such as would, without additional effort, have made an entry possible.

In his brief appellant emphasizes that when the witness, Wilson, observed a man at the door of the Relle residence, the unidentified man had merely opened the storm door and not the main door to the house. Appellant contends that since additional effort would be neces-

sary to complete the breaking sufficient to allow entry, there was no breaking.

It is well established that in this State, in order to overturn a judgment entered on the verdict of a jury for insufficiency of the evidence, it is necessary that there be no legally sufficient evidence or inferences drawable therefrom on which the jury could find a defendant guilty beyond a reasonable doubt. *Jones v. State*, 2 Md. App. 356, 234 A. 2d 625.

Appellant takes too narrow a view of the evidence in this case. In deciding appellant's guilt, the jury was not limited to the sole fact that a man was observed with the storm door open to the Relle residence. The jury could properly take into account all of the evidence which either directly supported guilt or supported a rational inference of guilt. It is not necessary that appellant be observed in the actual act of breaking and entering.

The jury could properly take into account the fact that the last lawful occupant of the building testified all the exterior doors were locked when she left, and the house was left the way she usually left it. Additional evidence by Officer Goldman showed the house was air conditioned and completely closed when he arrived at the home a few minutes after the crime was discovered. His exact testimony was as follows:

> "Q. And about how long after receiving this alarm did you arrive at the scene?
>
> "A. Approximately two minutes.
>
> "Q. Now, what—to the best of your recollection, what was the condition of the house, in addition to what you've just described, as you made your investigation?
>
> "A. I searched through—around the exterior of the house, I examined all the doors and all the windows, and at that time I did not find any windows open and none of the doors showed any signs of being forced open. It—the house was air conditioned and all of the doors and windows were closed."

Under *Reagan and Edwards v. State,* 6 Md. App. 477, 251 A. 2d 615, it is proper to sustain convictions for "breaking" where there has been testimony indicating that all doors and windows were closed at the time the last lawful occupant left the building. We cannot say there was no evidence from which the jury could so find.

Thus, we find there is sufficient evidence or inferences drawable therefrom to support appellant's conviction for daytime housebreaking under Art. 27, § 30 (b) of the Md. Code.

## II    Search and Seizure of the Lady's Wrist Watch

Appellant next contends the search and seizure of the Germinal Voltaire lady's wrist watch was illegal; appellant relies on *Chimel v. California,* 395 U. S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969).

Appellant apparently overlooks that his arrest was on June 25, 1968, and *Chimel* was not decided until June, 1969. This Court has held that *Chimel* is not retroactive. *Scott v. State,* 7 Md. App. 505, 256 A. 2d 384; *Mabane v. State,* 7 Md. App. 620, 256 A. 2d 701.

In *Scott v. State, supra,* this Court discussed at length the law prior to *Chimel.* Applying that law to the instant case, we find that the seizure of the wrist watch was not unreasonable. There is no need to discuss what the resolution of this problem would be if *Chimel* were applicable, but even under that case a police officer could seize contraband in plain sight.

## III    Identity of the Watch

Appellant lastly contends that the Germinal Voltaire watch, being indistinguishable from other watches of the same make and type, was not sufficiently identified as being that of Mrs. Relle's. This contention is also meritless. It is well established that only probability of connection with the accused or the crime is required for the admission of evidence. Lack of positive identification goes to the weight of the evidence, not to its admissibility. *Parker v. State,* 7 Md. App. 167, 254 A. 2d 381; *Tomolillo v. State,* 4 Md. App. 711, 245 A. 2d 94.

*Judgment affirmed.*