## CLARENCE M. THOMPSON v. STATE OF MARYLAND

[No. 528, September Term, 1971.]

*Decided May 17, 1972.*

---

336

The cause was argued before ORTH, THOMPSON and POWERS, JJ.

*Gerald Kroop* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton*

*B. Allen, State's Attorney for Baltimore City* and *P. Paul Cocoros, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Clarence M. Thompson was convicted by Judge Paul A. Dorf in the Criminal Court of Baltimore of the illegal possession of phenobarbital and illegal possession of heroin. From these convictions Thompson has appealed alleging that he was denied "a quick and speedy trial" and therefore his motion to dismiss the indictment should have been granted. Thompson also contends that his convictions cannot stand as the phenobarbital and heroin were discovered during a search following an illegal arrest and therefore should not have been admitted at his trial.

I

The record shows that appellant was arrested on November 19, 1970, and that his convictions resulted from a trial held on May 3, 1971; thus, a total of five and one-half months had elapsed. On December 29, 1970, appellant in proper person filed with the clerk of the Criminal Court a motion to dismiss. On January 20, 1971, presentments were filed. The next day appellant filed, again in proper person, a motion for discovery. A second motion to dismiss was filed on January 25, 1971. On the 26th of January, the Baltimore City Grand Jury filed their indictments for both charges. There are no docket entries covering the month of February 1971. On the 1st day of March, 1971, a letter was filed appointing Clement R. Mercaldo as counsel for the indigent defendant. Shortly thereafter it appears that appellant retained the services of Gerald A. Kroop and on March 11, 1971, Mr. Kroop filed his appearance, a motion for speedy trial and a motion for discovery and inspection. On March 22, 1971, the second motion for speedy trial was filed along with another motion to dismiss the indictments. There are no docket entries for the month of April, 1971. A motion to

suppress evidence was filed, trial was held and appellant convicted on May 3, 1971.

Four factors must be considered in a determination of whether appellant has been afforded his Sixth Amendment right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) prejudice to the accused; and (4) waiver by the accused. *Hall v. State*, 3 Md. App. 680, 240 A. 2d 630. In an extensive discussion of this constitutional right in *State v. Lawless*, 13 Md. App. 220, 229-231, it was said:

> "Before proceeding to an analysis of possible causation and possible consequence, however, we need know first whether there was, indeed, any delay and, if so, whether it was a delay of constitutional proportions.

> "In reckoning delay, it is well settled that for 'speedy trial' purposes, we look only at the time from the commencement of the prosecution (by way of warrant, information or indictment) to the time of trial. Although a general 'due process' right may be involved, there is no 'speedy trial' right guarding against undue delay in the pre-indictment or pre-arrest phase of a criminal proceeding. * * *

> "In looking then at the period of time taken by the State to bring a 'case' to trial, our threshold question is whether that period is of 'constitutional dimension'—that is, Has there been, in fact, any true 'delay' in the constitutional sense? Recognizing that the right to a 'speedy trial' is not the right to an immediate trial, but that time must be allowed for reasonable preparation on the part of the prosecution and for the orderly process of the case from indictment to retention (or appointment) of counsel to arraignment to trial, we reckon as 'delay' only the passage of time beyond that which is the obvious

requirement of orderly procedure. If, upon preliminary examination, we may determine that there has been no 'delay' of 'constitutional dimension'—if the claim of 'speedy trial' denial is clearly frivolous—if the passage of time is patently not inordinate—we are relieved of all necessity to make further analysis."

The Supreme Court has since explicated that "inordinate delay between arrest, indictment and trial may impair a defendant's ability to present an effective defense. * * * [I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engages the particular protections of speedy-trial provision of the Sixth Amendment." *U. S. v. Marion,* 404 U. S. 307, 92 S. Ct. 455, 463, 30 L.Ed.2d 468. The Court recognized that the passage of time however short between "accusation" and trial may deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. *Marion, supra* at 463-464. See also, *State v. Hamilton,* 14 Md. App. 582, 287 A. 2d 791.

Appellant was incarcerated from the time of his arrest until his trial 5½ months later; there elapsed 71 days from his arrest until the indictments were filed [1] and 98 days from the filing of the indictments until trial. For the purposes of this case then, we must decide whether the 5½ month period of time between arrest and trial was a "delay" of constitutional dimension. We think not.

The right to a speedy trial is a relative one and the time within which trial must be had to satisfy the guarantee depends upon the facts and circumstances of the particular case. *Stevenson v. State,* 4 Md. App. 1, 241 A. 2d 174.

---

1. That the seized items were controlled dangerous substances was not officially confirmed until chemically analyzed. The chemist's "Report of Analysis" is dated January 5, 1971. The court found that "The only place where, in fact, this State may have been, to say the least, a little delinquent, would have been the fact that the chemist's report was not obtained until January 5, but to the best of my knowledge four to six weeks is not an undue time for chemist's reports in this city."

From the date of the arrest until indictments were filed there elapsed 69 days; one month later, when it appeared that appellant had not retained an attorney one was appointed by the court; two weeks later appellant had retained an attorney who filed his appearance in court and made a motion for a speedy trial. A second motion for a speedy trial was filed eleven days later and trial was held 54 days after the original motion for speedy trial. During this 54 day period, appellant made motions for discovery and inspection, to dismiss indictments and to suppress and exclude evidence. During this period the State answered the motion for discovery and inspection and issued subpoenas for its witnesses. We think it clear, that unlike *Jones v. State,* 241 Md. 599, 217 A. 2d 367, where delay attributable to the State was shown to be effectuated for the convenience of individuals, if there was any delay here, it was caused by sound, necessary or legitimate reasons.

The appellant alleges he suffered actual prejudice from the delay because his companions at the time of the arrest were not available as witnesses at his trial. It appears that at least one of the witnesses would not have been available after December of 1970. Even if the record were more clear in this respect there was no proffer to show what their testimony, if available, would have been. The only real issue in the case was probable cause for the arrest and the missing witness obviously could not have contributed to the solution of that problem. On this record we feel the appellant has failed to establish actual prejudice. It should also be noted that prejudice as claimed here can occur with the lapse of the shortest time. Indeed a witness can die or disappear within a few hours after the accused is arrested. If prejudice is clearly established it must be weighed against the length of the delay and the reasons therefor. Even if prejudice had been established we could see no denial of the right to a speedy trial on the facts of the instant case.

## II

Appellant's second contention is that the heroin and phenobarbital were obtained as a result of an unconstitutional search and seizure and therefore should not have been admitted in evidence under *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081. The search and seizure are claimed to be unconstitutional because they followed an alleged illegal arrest. See Md. Code, Art. 27, § 594B (c).

An arrest may be made without a warrant provided the arresting officer had probable cause to believe that a felony had been committed and that the person arrested committed it. Probable cause for arrest exists where the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient of themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed by the accused. And those facts and circumstances may come within the officer's knowledge by means of a lookout broadcast over the police radio system. *Darby v. State,* 3 Md. App. 407, 239 A. 2d 584; *English v. State,* 8 Md. App. 330, 259 A. 2d 822; *Carwell v. State,* 2 Md. App. 45, 232 A. 2d 903; *Williams v. State,* 3 Md. App. 115, 238 A. 2d 140.

Officer Robert MacKenzie testified that on November 19, 1970, while working the midnight to 8 a.m. shift, a call came over the police radio "[W]anted in the Northern District for assault and robbery, North Avenue and Guilford, the following described males. No. 1, negro male, short height, no further description. No. 2, negro male, tall, no further description. Weapon used was a revolver. They were last seen operating a 68 or 69 Dodge G.I. Cab, No. 155, going west on North Avenue from Guilford. Information from car 514, Northern District. Complainant's No. K35496. Caution. Subjects armed." About 2:10 a.m. there was a broadcast originating from a patrol car requesting a backup unit as G.I. Cab No. 155 was proceeding westbound in the 900 block of North Avenue and

the police car was following it. Officer MacKenzie responded and noted that the cab had three occupants. A request was then broadcast for an additional backup car. When the third police car joined the procession, Officer MacKenzie ordered the cab to stop. At gun point MacKenzie ordered appellant to get out of the cab. The appellant refused to comply and it "took several times of loud yelling to get him to come out." The other occupants of the cab had been "cooperative . . . they opened the cab door and got right out." In response to the court's question as to what he had then done, MacKenzie stated, "Search the occupants that came out of it on my side of the cab. As I said, I was told by the dispatcher they were apparently, they were possibly armed. Being careful, watching out for myself and my men, they were searched immediately." In appellant's right front trousers' pocket MacKenzie found what are described as two large glassine bags containing white powder.

As the appellant was being escorted to the cruising patrol he requested that an officer retrieve from the cab a "shopping bag full of clothes." The bag was recovered and when later searched at the police station "it was carefully gone over and six tablets were found in the bottom of that." MacKenzie testified that appellant identified the pills as phenobarbital and that they have been "given to him by prescription." No weapons were recovered.

While the record does not specifically disclose when the "lookout" broadcast occurred, there would seem to be a fair inference from the record that it was broadcast between the time Officer MacKenzie came on duty—midnight, and 2:10 a.m. when the arrest occurred. *Farrow v. State,* 233 Md. 526, 197 A. 2d 434. Appellant concedes that the police "had an absolute right to stop that cab, confront and accost," but denies that they had a right to search. We disagree with appellant's qualification. At the time of the arrest the arresting officer had information that an assault and robbery had occurred at North and Guilford Avenues and that two negro males were wanted in connection with these crimes. He knew that the crimes

were committed with the assistance of a revolver and that the wanted men escaped from the scene west on North Avenue, in a Dodge automobile operated as a taxicab by a particular taxicab company and that the number assigned to that cab was 155. He had been cautioned a second time that "subjects [are] armed." When MacKenzie received a request from a fellow officer for assistance in stopping Cab No. 155 on North Avenue and arresting its occupants, he had, from facts within his knowledge, probable cause to arrest. Having been a legal arrest, the incriminating evidence obtained through the search was properly admissible in evidence.

Unlike appellant, we do not assign crucial significance to MacKenzie's use of the word "operating" in relating the lookout bulletin. That there were three occupants of the halted vehicle instead of the two that "were last seen operating . . . G.I. Cab No. 155", is not dispositive. The description of the car was so precise that a discrepancy as to the number of occupants, although significant, is not controlling. See *Williams v. State, supra,* where there was a similar discrepancy in the broadcast.

The principle applied in the instant case must be distinguished from that applied in such cases as *Hebron v. State,* 13 Md. App. 134, 281 A. 2d 547, and *Sands v. State,* 9 Md. App. 71, 262 A. 2d 583, where the broadcasts indicated only that the man was wanted for investigation and was not therefore on its face sufficient to justify an arrest. In those cases and others like them, it is incumbent upon the state to go farther and produce evidence showing that although the arresting officer did not have probable cause to make the arrest that the police team did have such cause. In such cases the state is required to produce the evidence on which the officers initiating the broadcast acted. Maryland courts have long recognized that an individual officer can be furnished with probable cause for an arrest if he receives his information from responsible sources. In *Walker v. State,* 237 Md. 516, 206 A. 2d 795, the Court of Appeals found that a letter from the Federal Bureau of Investigation was from a responsible of-

ficial source and that, therefore, would furnish the officer with probable cause. Our cases have also recognized that the presence of information on an official Police Department "lookout sheet" would be a responsible official source and could furnish probable cause for the arrest. *Mercer v. State,* 237 Md. 479, 206 A. 797, *McGhee v. State,* 9 Md. App. 267 A. 2d 306, *Gibson v. State,* 4 Md. App. 222, 242 A. 2d 204, *Darby, supra.* Compare *Duggins v. State,* 7 Md. App. 486, 256 A. 2d 354, where the State attempted to rely on an officer's statement that a warrant had been issued but declined to produce the warrant under proper challenge. In the instant case the State met its burden of preliminarily showing *prima facie* probable cause and there was no challenge or inquiry by the defense of the basis on which the Police Department issued the broadcast.

The application of the principle in the present case must be distinguished from cases such as *Whiteley v. Warden,* 401 U. S. 560, 91 S. Ct. 1031, 28 L.Ed.2d 306, where although the broadcast on its face was sufficient to justify the arrest, other evidence on the record showed that the warrant was issued without probable cause. In that case, the Supreme Court recognized that an official broadcast could furnish an individual officer with probable cause for arrest but if the record showed that the broadcast was based on insufficient probable cause, then the arrest would be illegal, saying at 401 U. S. 560, 568, 91 S. Ct. 1031, 1037:

> "We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge

by the decision of the instigating officer to rely on fellow officers to make the arrest."

In *Edwards v. State,* 13 Md. App. 546, 284 A. 2d 10, (*certiorari* granted by the Court of Appeals of Maryland March 6, 1972), we held a search warrant invalid because the supporting affidavit failed to give any indication of the time at which the alleged occurrences took place. We there cited several cases showing that the language of the application could show that the information was timely even though it failed to give the exact date and time of the alleged offense. In the instant case we have already referred to the fact that the time the broadcast was received by Officer MacKenzie was narrowed to between 12 and 2:10 a.m. We now point to the fact that the whole tenor of the broadcast was that the crime had occurred shortly prior thereto and that the felons were escaping in a particular cab going west on North Avenue from Guilford. It is significant that the cab was sighted only a few blocks from the scene of the alleged crime. We think these factors are sufficient to distinguish the case from the principle applied in *Edwards, supra.* The fact that the appellant was charged and convicted of a different offense from that for which he was arrested is of no importance. *Tomolillo v. State,* 4 Md. App. 711, 245 A. 2d 94. The test is whether or not the police officer making the arrest had probable cause to believe the appellant committed a felony rather than that he had sufficient evidence to warrant a conviction of that crime. *Terrell v. State,* 3 Md. App. 340, 359, 239 A. 2d 128, 138.

*Judgments affirmed.*