JAMES WESLEY CARTER *v.* STATE
OF MARYLAND

[No. 656, September Term, 1972.]

*Decided June 11, 1973.*

The cause was argued before MENCHINE, SCANLAN and
DAVIDSON, JJ.

*Robert V. Lazzaro* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom
were *Francis B. Burch, Attorney General, Howard L.
Cardin, State's Attorney for Baltimore City,* and *Joseph B.
Harlan, Assistant State's Attorney for Baltimore City,* on
the brief, for appellee.

SCANLAN, J., delivered the opinion of the Court.

The appellant, James Wesley Carter, was found guilty of possession and control of narcotics following a trial in the Criminal Court of Baltimore which began before Judge Joseph L. Carter and was concluded, by mutual consent of the appellant and the State, before Judge J. Harold Grady, sitting without a jury. Appellant was sentenced to three years imprisonment.

The issue on this appeal is whether probable cause existed for the arrest of the appellant so as to justify the search and seizure of incriminating narcotics evidence which occurred as an incident of his arrest. For the reasons stated below, we conclude that probable cause did not exist to arrest the appellant and that the trial court thus erred in admitting the incriminating evidence over appellant's timely objection at trial.

On January 10, 1969, Elijah Davis reported to the Baltimore Police Department that a 1967 Chevrolet Camaro, carrying license tags No. HE-7388 and owned by Davis' brother-in-law, Robert Lee Fletcher, had been stolen. Davis had been driving the car just prior to the theft and he reported to the police that the car had been stolen within five minutes after it was taken.

The police recovered the stolen vehicle within ten minutes after receiving the report from Davis. It was recovered about a mile from the place from which it had been stolen. In the interval following the theft and before the recovery of the car it had been involved in a hit-and-run accident and was wrecked in the crash. The police took the car to the police lot where Davis viewed it. Subsequently, Fletcher, the owner of the car which had been stolen, applied to and received permission from the State Department of Motor Vehicles for a transfer of the license tags HE-7388 to another automobile. While the record is not absolutely clear on the point, it appears that the police returned the original license plates to Fletcher following recovery of the stolen vehicle.

On the day the car was stolen, January 10, 1969, the police prepared and filed a stolen vehicle report numbered 1A150.

Despite the recovery of the stolen vehicle within ten minutes after it had been taken, report 1A150 was not cancelled or rescinded prior to the occurrence of certain events on March 10, 1969. In the early morning hours of that day, Officer Richard Nock of the Baltimore City Police Department observed a Chevrolet hardtop car (a Caprice) moving at a high rate of speed. Nock was traveling in a police cruiser alone. He chased the car and pulled it over to the curb.

Officer Nock approached the car which contained two persons, Elijah Davis, who was operating the vehicle, and the appellant, who was a passenger. Officer Nock testified that the driver gave him his driver's license but no motor vehicle registration card. Davis and the appellant both testified that the former gave Officer Nock a temporary registration card. While the driver and appellant remained in their car, Officer Nock returned to his cruiser and radioed for a stolen car report. At the preliminary hearing, Officer Nock testified that the police dispatcher advised him that the license tags on the car (HE-7388) he had stopped had been stolen and that there was a warrant out for the operator for traffic violations. A year later, in his testimony on the motion to suppress, Officer Nock testified that the dispatcher had told him that the vehicle bearing the HE-7388 tags had been stolen and that the car and its operator were also wanted in connection with a hit-and-run violation.

After talking to the police dispatcher, Officer Nock ordered Davis and the appellant out of the car, advised them that he had received information that the car was wanted and that they were under arrest, and began a routine frisk for weapons. According to Officer Nock, at this point in time the appellant "blurted out" that: "The stuff is in my right pants pocket." Officer Nock inquired: "What stuff," to which the appellant replied: "Heroin." Officer Nock then reached into the appellant's pocket and removed fifty glassine bags of white powder, which were later examined and found to contain heroin. According to Officer Nock, the appellant then said that: "The gun is under the front driver's seat." The police officer found a gun at that location.

At trial, the police dispatcher did not testify but the State introduced a green card, used by the police dispatcher, which indicated that the dispatcher had received an inquiry from Officer Nock concerning automobile license tags HE-7388 at 2:20 A.M. on March 10, 1969. The green card also contained a penciled reference to stolen vehicle report 1A150, the report which the police had prepared on January 10, 1969 when Davis had reported the theft of the 1967 Chevrolet Camaro, bearing the license number HE-7388. The dispatcher's green card also contained a notation reading: "Vehicle & Operator wanted for Traffic Violations."

Officer Nock took Mr. Davis and the appellant to the police station where they were charged with the possession of narcotics, the possession of a deadly weapon, and a stolen automobile. Subsequently, Officer Nock learned that the car in which Davis and the appellant were riding when he stopped them had not been stolen. It appears, for reasons not discernible from the record, that when Fletcher's 1967 Chevrolet Camaro was recovered on January 10, 1969, there was a failure to correct the police records to show that the vehicle had been recovered.

Judge Grady found that appellant's arrest, and the search and seizure incident thereto, were valid. In his opinion, Officer Nock, on the basis of the information received from the police dispatcher, had reasonable grounds to believe that the automobile which he stopped, and in which the appellant had been riding, was a stolen car and, therefore, was justified in arresting the appellant and conducting a search of his person. Accordingly, the trial judge admitted into evidence the bags of heroin taken from appellant's person when he was searched.

Thus, the precise issue which arises on this appeal is whether a police officer in the field who was advised by his dispatcher that a car which the former had stopped for speeding was a stolen vehicle had reasonable grounds to arrest the driver and passenger of the vehicle and to search them, even though the information which the dispatcher transmitted was erroneous, since it referred to a different vehicle and one which had been recovered by the police

within ten minutes after it was stolen, three months before the challenged arrest and search and seizure took place.

Article 27, § 594B (c) of the Maryland Code provides:

> "A police officer may arrest a person without a warrant if he has probable cause to believe that a felony has been committed or attempted and that such person has committed or attempted to commit a felony whether or not in his presence or view."

Probable cause existing at the time of an arrest is the measure of the legality of the arrest. *Evans v. State*, 11 Md. App. 451, 274 A. 2d 653 (1971). It is settled that probable cause may be based on information within the collective knowledge of the police. *Collins v. State*, 17 Md. App. 376, 302 A. 2d 693 (1973); *Hebron v. State*, 13 Md. App. 134, 281 A. 2d 547 (1971). Thus, even though an arresting officer personally may lack probable cause to justify an arrest, the State can show that the police team collectively possessed knowledge sufficient to establish probable cause. *Thompson v. State*, 15 Md. App. 335, 343, 290 A. 2d 565 (1972); *Collins v. State, supra.* For example, decisions of this Court have recognized that the presence of information on an official police department "lookout sheet" may be utilized in demonstrating probable cause for an arrest. *McGhee v. State*, 9 Md. App. 526, 529, 267 A. 2d 306 (1970); *Gibson v. State*, 4 Md. App. 222, 226, 242 A. 2d 204 (1968); *and see Johnson v. State*, 238 Md. 528, 209 A. 2d 765 (1965).

The problem in this case, however, is that the information contained within the collective knowledge of the Baltimore Police Department which was communicated to the arresting officer in the field was completely erroneous, *i.e.*, neither the tags nor the vehicle that he had stopped were stolen property at the time of the arrest. Moreover, the police department should have known that it was erroneous, since police officers had recovered the vehicle and tags originally reported stolen on January 10, 1969.[1] It is one

1. A different case would be presented if the owner had recovered his own car following the theft and then had not reported its retrieval to the

thing to permit an arrest to be made on information residing in the police files; it is another to sanction an arrest the probable cause for which is based on police information which is not true. The erroneous police information on which Officer Nock relied to arrest the appellant was equivalent to, and rose to no higher level of proof of probable cause than, the invalid arrest warrant which we condemned in *Collins v. State, supra.*

Analogous in its facts and controlling on the point is *Whiteley v. Warden*, 401 U. S. 560 (1971). In that case, a Wyoming sheriff, acting on an informer's tip, obtained a warrant for Whiteley and another individual. A statewide radio bulletin named and described the two persons wanted in the warrant, the type of car which they were probably driving, and the amount and type of money which had been taken during the break-in with which they were charged. Relying on the radio bulletin, an officer in another Wyoming county arrested the suspects without a warrant. The police then searched their car and seized various incriminating items which were later used at a trial resulting in Whiteley's conviction. That judgment was affirmed by the Supreme Court of Wyoming, but reversed by the Supreme Court of the United States on the ground that the original arrest warrant was invalid. The State of Wyoming, however, argued that regardless of the validity of the arrest warrant, the police officer who actually made the arrest possessed sufficient factual information to support a finding of probable cause for arrest without a warrant. The Supreme Court disagreed, pointing out that the record was devoid of any information "at any stage of the proceeding from the time of the burglary to the event of the arrest and search that would support" the reliability of the information on the basis of which the original arrest warrant was issued. *Id.* at 567. The Court went on to say:

"We do not, of course, question that the Laramie

police. In such instance, the original police report on the stolen vehicle might be considered as "reasonably trustworthy information" and sufficient to provide probable cause for the arrest of the occupants of a vehicle matching the description in the report. Cleveland v. State, 8 Md. App. 204, 218, 259 A. 2d 73 (1969).

police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." *Id.* at 568.

In *Thompson v. State, supra,* we referred to *Whiteley v. Warden* as supporting the proposition "that an official [police] broadcast can furnish an individual officer with probable cause for arrest, *but if the record shows that the broadcast was based on insufficient probable cause, then the arrest would be illegal . . . ."* 15 Md. App. at 344 (emphasis added). More recently, in *Collins v. State, supra,* we again took note of *Whiteley* in striking down an arrest based on a warrant not supported by probable cause, but left open the question of whether, on a new trial, the State could show that information gathered independently by the police team might be sufficient to sustain a finding of probable cause.

In the case at bar the information possessed by the police team was an outdated, erroneous report of a stolen motor vehicle which the police had recovered on the same day it was taken. The police team, therefore, must be charged with the knowledge that the report was, in effect, rescinded when members of the Baltimore City Police Department recovered the car shortly after it was stolen. Accordingly, the erroneous information transmitted to Officer Nock and on the basis of which he arrested the appellant was clearly insufficient to show probable cause.

In so concluding, we have not been moved by the *in terrorem* arguments of the appellant that if we were to affirm his conviction the police thereby might be encouraged to broadcast or send out false information to police officers in the field as a device through which to make arrests which

would otherwise be beyond their authority. At the same time, we are confident that our decision today will in no way hamper legitimate law enforcement activities by the police. In the great majority of cases, information possessed by the police team and dispatched to the field will be reliable or "reasonably trustworthy" information. Police officers in the field will be entitled to act and, where justified, to arrest on the basis of the information transmitted to them. Nevertheless, in the rare case, such as this one, where the information dispatched from police headquarters or other police sources proves to be completely erroneous, and where that fact is properly chargeable to the collective knowledge of the police team, an arrest made on the basis of the erroneous information, and a search and seizure conducted as an incident of that arrest, should not be upheld.

*Judgment reversed.*
*Costs to be paid by the Mayor and*
*City Council of Baltimore.*