550 A.2d 416

**Timothy Eugene HAWKINS**

v.

**STATE of Maryland.**

**No. 372, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Dec. 1, 1988.

Julia Doyle Bernhardt, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Cathleen C. Brockmeyer (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty. for Montgomery County, Rockville, on the brief), for appellee.

Submitted before GARRITY, ALPERT and WENNER, JJ.

ALPERT, Judge.

Appellant, Timothy Eugene Hawkins, was charged with one count each of possession, possession with intent to distribute, and distribution of a controlled dangerous substance. A motion to suppress the introduction of certain evidence was denied after a hearing on January 25, 1988. At trial in the Circuit Court for Montgomery County, appellant was convicted on all three counts, and he was sentenced to concurrent twenty year terms on the distribution and intent to distribute counts and a concurrent sentence of one year imprisonment on the simple possession count. The court then suspended ten years of the twenty year sentences in favor of five years supervised probation. This

appeal followed. Appellant presents four questions on appeal:

1. Did the trial court err in ruling that appellant lacked standing and in denying his motion to suppress evidence?

2. Did the trial court err in admitting the seized evidence and the analysis thereof where the integrity of the chain of custody had not been established?

3. Was the evidence insufficient to support the conviction for distribution?

4. Are the sentences for possession with intent to distribute and possession illegal?

We affirm in part and modify in part.

## FACTS

On November 12, 1986, several members of the Montgomery County Police Department's "Jump Out Squad", a unit formed to combat drug transactions, were on surveillance at an apartment complex on Scenery Drive in Gaithersburg. From a vacant apartment, Officer Jeannie Hobbs noticed the appellant leaning against a fence near the parking lot. A white male with a red jacket ("Red Jacket") approached appellant. Appellant pulled out a baggie containing several packets wrapped in aluminum foil and handed one of the packets to Red Jacket. That person proceeded to sniff the packet; he then handed the appellant some money and pocketed the packet. After Red Jacket walked away, appellant remained in the same location.

Officer Hobbs radioed several other members of the team, related what she had observed, and directed them to arrest the appellant. As Officer Daryl Ferdock, in plain clothes, approached to within several feet of appellant, appellant noticed him and started running. Officer Ferdock gave chase, shouting "Stop, police!" Appellant continued to run, reached into his coat pocket, and threw aside the plastic baggie. He was apprehended a moment later. Offi-

cer Ferdock retrieved the bag, the substance inside of which later tested positive for marijuana and phencyclidene (PCP).

## Motion to Suppress

Appellant argues that the baggie and its contents should have been suppressed as the result of an illegal arrest. He contends that because Officer Ferdock did not possess probable cause to arrest appellant, independent of Officer Hobbs' observations, and because Officer Hobbs did not testify at the suppression hearing, the court's denial of his motion to suppress was reversible error. The State argues that the appellant had no standing to make the argument because, by throwing away the evidence, he abandoned it. Appellant responds that the abandonment was forced by illegal police conduct; therefore, he has standing.

We address the standing argument first. The general rule is that "abandoned property does not fall within that category in which one has a legitimate expectation of privacy to bring it within the protection of the Fourth Amendment." *Everhart v. State,* 274 Md. 459, 483, 337 A.2d 100 (1975). Appellant contends, however, that the abandonment was compelled by unlawful police conduct, *i.e.,* an attempted arrest without probable cause. Before we begin to examine whether probable cause for the arrest existed, we must determine whether the chase prior to the arrest even implicates the Fourth Amendment probable cause for seizure analysis.

In *Michigan v. Chesternut,* —— U.S. ——, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), the United States Supreme Court examined this same issue. There, two police officers in a patrol car began following Chesternut when he ran after spotting the patrol car. The officers caught up to Chesternut and drove alongside him. As he continued to run, he began to discard a number of unidentified packets. One of the officers exited from the patrol car, noticed the packets contained pills, gave chase, and arrested him. Chesternut argued that all police chases are Fourth Amendment seizures; while Michigan countered that "the Fourth Amend-

ment is never implicated until an individual stops in response to the police's show of authority." *Id.* 108 S.Ct. at 1978–79.

The majority refused to adopt a bright line rule and applied a test it first articulated in *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980):

> The test provides that the police can be said to have seized an individual "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."

*Chesternut, supra,* 108 S.Ct. at 1979 (*quoting Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877). Under this test, which examines the objective belief of the defendant, the respondent in *Chesternut* was not "seized" under the Fourth Amendment, because such an investigatory pursuit would not lead a reasonable person to believe that he was not free to leave. *Id.* 108 S.Ct. at 1980. Interestingly, although the concurring opinion in *Chesternut* advocated adoption of the bright-line rule argued by the petitioner, *see id.* at 1981 (Kennedy, J. concurring), the majority expressly left open the question whether a pursuit under the facts present in this case would constitute a Fourth Amendment seizure. *See id.* at 1980, nn. 8, 9.

■ Until the Supreme Court has an opportunity to decide whether a situation like the present one will compel it to abandon the "objective belief of the defendant" test for the "chase is not a seizure" bright-line rule, we will apply the former. A reasonable person in the appellant's shoes probably would not have felt under any compulsion to remain as the plain clothes officer silently approached. Where, however, the officer gave chase and shouted, "Stop, police!," the chase rose to the stature of a Fourth Amendment seizure under the *Chesternut* analysis.[1] From Officer

---

1. Prior to *Chesternut,* we held that because a chase is not an arrest, a criminal defendant did not have standing to argue suppression of evidence abandoned before he was physically restrained, even if the arrest was without probable cause. *See Wynn v. State,* 69 Md.App.

Ferdock's testimony, appellant's abandonment of the baggie occurred after the officer began to give chase and shouted an order to the appellant to stop. Thus, a Fourth Amendment seizure had taken place and we must examine the officer's actions to determine whether probable cause existed for the officer to make an arrest.

At the suppression hearing, Officer Ferdock testified that he relied on Officer Hobbs' relation of her observations to him in effectuating the arrest. We stated in *Carter v. State*, 18 Md.App. 150, 305 A.2d 856 (1973):

> Probable cause existing at the time of an arrest is the measure of the legality of the arrest. *Evans v. State*, 11 Md.App. 451, 274 A.2d 653 (1971). It is settled that probable cause may be based on information within the collective knowledge of the police. *Collins v. State*, 17 Md.App. 376, 302 A.2d 693 (1973); *Hebron v. State*, 13 Md.App. 134, 281 A.2d 547 (1971). Thus, even though an arresting officer personally may lack probable cause to justify an arrest, the State can show that the police team collectively possessed knowledge sufficient to establish probable cause. *Thompson v. State*, 15 Md.App. 335, 343, 290 A.2d 565 (1972); *Collins v. State, supra.*

*Id.* at 154, 305 A.2d 856. Given Officer Hobbs' observations which, in light of her police training, led Officer Hobbs to believe that a drug transaction had occurred, Officer Ferdock, under the "police team" theory, possessed probable cause to arrest appellant in response to Officer Hobbs' request.[2]

Appellant contends, however, that although Officer Ferdock testified at the suppression hearing in regard

---

536, 541, 518 A.2d 1072 (1987), *rev'd on other grounds,* 313 Md. 533, 546 A.2d 465 (1988). In light of *Chesternut,* however, we are required to examine the circumstances prior to the literal seizure to determine at what point the police must possess probable cause to effectuate the seizure.

2. The sufficiency of Officer Hobbs' observations for a finding that Officer Ferdock had probable cause to arrest are further reinforced by the fact that appellant fled when approached by Officer Ferdock.

to the information relayed to him by Officer Hobbs, Officer Hobbs herself was required to testify as to probable cause at the suppression hearing. No such requirement is mandated. Appellant errs in his assumption that Officer Hobbs' probable cause may only be articulated through her testimony. We need only be concerned with whether Officer Ferdock, based on the information received from Officer Hobbs, had probable cause to arrest appellant. If the motion to suppress had concerned whether probable cause to issue a search warrant existed, the court would not require testimony at a suppression hearing from the source of the information upon which an officer relies in seeking a search warrant. Instead, the court examines the "totality of the circumstances" to determine whether probable cause for the warrant existed. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Primary emphasis is still placed on the reliability of the source of the information and the source's basis of knowledge. *Id.* As in cases where the validity of an arrest or search warrant is questioned, the totality of the circumstances is examined with primary emphasis on the trustworthiness of the source relied upon and the source's basis of knowledge.

The defendant is not entitled to require the source of the information to testify at a suppression hearing. Officer Ferdock testified regarding the information related to him by Officer Hobbs, a reliable and trustworthy source of information. The content of the information gave rise to sufficient probable cause to arrest appellant. Appellant has presented no evidence or reasonable hypothesis that would lead us to believe that the contrary was true. Thus, "[i]n the instant case the State met its burden of preliminarily showing prima facie probable cause." *Thompson v. State,* 15 Md.App. 335, 344, 290 A.2d 565 (1972). In sum, although the content of the information must be proven by the State, the basis or source of the information need not be presented firsthand. *Accord, State v. Mills,* 735 S.W.2d 197, 201 & n. 2 (Mo.App.1987); *People v. Dodt,* 61 N.Y.2d 408, 474 N.Y. S.2d 441, 445, 462 N.E.2d 1159, 1163 (1984). Therefore, we

conclude that appellant's motion to suppress was properly denied.

## Chain of Custody

Regarding the chain of custody of the baggie containing several aluminum packets, it appears that the arresting officer placed the baggie and its contents in an evidence bag that was marked with the arresting officer's and defendant's name, and then delivered it to the supervisory officer at the station. The baggie was then placed in a different evidence bag; the first one presumably was discarded. The second evidence bag was then marked the same way. The normal procedure was to staple it shut, although the supervisory officer had no specific recollection as to the procedure concerning this particular bag. The supervisory officer then took the evidence bag and its contents to the Vice and Narcotics Division Office, where it was placed in a safe.

Five days later, another officer on the Jump Out Squad completed the paper work, relabeled the evidence, transferred the baggie and its contents to another evidence bag, and heat sealed it. On November 26, 1986, this officer transported the bag to the Montgomery County Police Crime Lab.

The chemist assigned a lab number to the bag, signed the evidence transmittal form, and put the evidence bag in the vault. On December 15, 1986, the chemist tested each foil packet within the baggie individually and placed red stickers on each foil packet. The baggie and its contents were placed back into the evidence bag, the bag was resealed, and the chemist initialed it. The bag was placed back into the safe until trial. The chemical tests on the contents of all the foil packets revealed the presence of marijuana and PCP.

Appellant launches a multi-faceted attack on the chain of custody, complaining that the paper work was not completed until five days after the seizure, that the evidence may not have originally been sealed or, in any event,

it was not heat sealed, that the bag may not have been properly labelled and that the bag could have been mixed with other evidence.[3] The test Maryland courts utilize in examining the sufficiency of the chain of custody, is whether there exists the "reasonable probability that no tampering occurred." *Breeding v. State*, 220 Md. 193, 199, 151 A.2d 743 (1959); *Hignut v. State*, 17 Md.App. 399, 421, 303 A.2d 173 (1973); *Blake v. State*, 15 Md.App. 674, 683, 292 A.2d 780 (1972). Although the chain of custody procedure utilized in this case was admittedly less efficient and more mistake prone than subsequent procedures adopted by the Montgomery County Police Department, none of the appellant's contentions requires the rejection, as a matter of law, of the "reasonable probability that no tampering occurred." Sufficient testimony exists that, if believed by the trier of fact, the chain of custody regarding the baggie and its contents has been established. *See Colesanti v. State*, 60 Md.App. 185, 192, 481 A.2d 1143 (1984); *Blake, supra*, 15 Md.App. at 684, 292 A.2d 780 ("At best, a question of credibility of witnesses arose in the State's case, and that question was for the trier of the facts, the jury, to determine."). Conversely, appellant presents no evidence with regard to tampering or mistake that would lead a trier of fact to believe that what might have happened actually occurred. Therefore, the lower court's factual determination that "no taint" was established with regard to admitting the baggie and its contents into evidence was not clearly erroneous.

### *Distribution—Sufficiency of Evidence*

◼ Appellant's third contention is that the evidence was insufficient to convict on the distribution of a controlled dangerous substance count. Because Red Jacket was not arrested, he argues, no evidence exists that the tin-foil

---

**3.** Presumably, this last argument was made on the basis that several people had access to the safe, that other evidence may have been seized in other arrests during that time, and that the bag may not have been properly marked.

packet sold to this person contained PCP. The test for sufficiency of the evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tichnell v. State*, 287 Md. 695, 717, 415 A.2d 830 (1980), citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In the case *sub judice*, police officers observed the appellant leaning against a fence at night in a parking lot that the special drug unit had targeted as an area frequented by drug dealers. A man approached appellant, whereupon appellant pulled out a baggie containing several tin foil packets and gave one to this other person. The other individual sniffed the packet and then gave appellant money. After the other person left, the appellant remained in the parking lot.

Based upon her training and experience, Officer Hobbs testified at trial that marijuana/PCP is frequently packaged in small, tin-foil packets and that PCP emanates an odor of ether (tending to explain why the third person sniffed the package). Sometime after the appellant was arrested, the remaining foil packets were chemically tested, and *all* were found to contain marijuana and PCP. Despite the fact that the particular packet sold was not recovered and tested, the evidence is sufficient to sustain appellant's conviction for distribution of a controlled dangerous substance.

### Merger

■ Appellant's final contention is that the possession and possession with intent to distribute counts should merge into the distribution count. To support his argument, he cites to *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and *Newton v. State*, 280 Md. 260, 373 A.2d 262 (1977). While these cases are supportive of the fact that the proper merger test in Maryland is the "required evidence" test, they are only partially applicable to the facts before us. The required evidence

test only applies "where the *same act or transaction* constitutes a violation of two distinct statutory provisions." *Blockburger, supra,* 284 U.S. at 304, 52 S.Ct. at 182. In this case, the possession conviction merges into the possession with intent to distribute conviction because they arise from the same act and only possession with intent to distribute requires proof of a different fact, *i.e.,* an intent to distribute. *See Newton, supra,* 280 Md. at 266, 373 A.2d 262. Thus, the one-year sentence for possession of a controlled dangerous substance must be vacated.

■  The possession with intent to distribute and distribution convictions do not merge for the purpose of sentencing. Because these two crimes spawned from separate acts, *Blockburger* is not implicated. Officer Hobbs' surveillance of the appellant gave rise to the appellant's conviction for distribution of a controlled dangerous substance.[4]  After the observed transaction, appellant remained in his position in the parking lot. The distribution was completed. As Officer Ferdock attempted to arrest appellant a moment later, appellant discarded a baggie containing a quantity of drugs sufficient to give rise to an inference of an attempt to distribute.

As was stated succinctly by the United States Court of Appeals for the Third Circuit, "When an individual possesses an amount of heroin that could result in a future distribution, and when the same individual also distributes another quantity of heroin, he is punishable for both possession and distribution." *United States v. Carter,* 576 F.2d 1061, 1064 (3rd Cir.1978). *Accord, United States v. Carcaise,* 763 F.2d 1328, 1334 (11th Cir.1985) (no merger of possession with intent to distribute and distribution required where

---

4. As we related earlier, Officer Hobbs' training and experience gave her probable cause to believe that the transaction between "red jacket" and appellant was drug-related. Although we recognize that appellant's arrest, revealing that he was carrying PCP and marijuana in large quantities, bolsters the distribution conviction, we do not find that this overlap in the evidence requires us to apply a merger analysis where the acts are clearly unrelated.

defendant admitted several times that he possessed the drugs in a warehouse and where he subsequently gave a small amount to the government witness); *United States v. Ray,* 731 F.2d 1361, 1368 (9th Cir.1984) (no merger required for possession of cocaine with intent to distribute on December 8th and distribution of cocaine on December 7th because the December 7th cocaine had already been distributed by December 8th); *Camp v. State,* 181 Ga.App. 714, 353 S.E.2d 832, 835 (1987) (no merger of possession of marijuana with intent to distribute and sale of marijuana counts where small baggie was sold to agent, defendant was arrested, and a large amount of marijuana was found within his control and possession); *State v. Carter,* 714 P.2d 1217, 1220–21 (Wyo.1986) (no merger of possession of controlled substance and sale of controlled substance where marijuana sale completed, defendant arrested, and six vials of hash oil found in his possession). Therefore, the trial court did not err in refusing to merge the convictions for possession with intent to distribute a controlled dangerous substance and distribution of a controlled dangerous substance.

CONVICTION ON COUNT 3 AFFIRMED; SENTENCE VACATED; REMAINING CONVICTIONS AND JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.