**STATE of Iowa, Appellant,**

v.

**Shawn Robert EWOLDT, Appellee.**

No. 88–1197.

Court of Appeals of Iowa.

Oct. 5, 1989.

Thomas J. Miller, Atty. Gen., Ann E. Brenden, Asst. Atty. Gen., and Francine O'Brien Andersen, County Atty., for plaintiff-appellant.

David E. Green of Green & Siemann, Carroll, and Emil Trott, Jr., of Barrett & Trott, Des Moines, for defendant-appellee.

Considered by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Presiding Judge.

On June 11, 1988, two city police officers recognized Shawn Ewoldt driving his white Trans Am within the city limits of Audubon. The officers knew that Ewoldt had recently been arrested for OWI and that his driver's license might be under revocation. They asked the police dispatcher to run a computer check on Ewoldt and were informed that both an automatic check and a manual check showed that his license had been revoked, prohibiting him from driving between June 3 and November 30, 1988. Relying on this information, the officers stopped Ewoldt and noticed physical signs of intoxication. Subsequently, Ewoldt failed some standard field sobriety tests, recited the alphabet incorrectly, and submitted to an Intoxilyzer test that indicated an alcohol concentration of .143.

Later, the computer data the officers relied on in stopping Ewoldt proved to have been incorrect. Ewoldt's license had indeed been revoked, but Department of Transportation documentation dated May 11, 1988, reveals that the revocation was not to take effect until July 10, 1988. At the time the officers stopped him, Ewoldt was driving with a valid temporary permit issued by the Department of Transportation. Ewoldt filed a motion to suppress all evidence gained as a result of the investigatory stop. The trial court sustained the motion holding that "no reasonable grounds or probable cause existed for the initial stop of defendant's car."

In this discretionary review action the State challenges that order. Acknowledging that the officers relied on computer data later found to be inaccurate, the State contends that the stop of Ewoldt's car was nevertheless constitutionally permissible because the information in the officers' possession at that time constituted "specific and articulable cause to support a reasonable belief that criminal activity may have occurred," thus satisfying the standard articulated in *State v. Lamp*, 322 N.W.2d 48, 51 (Iowa 1982). Ewoldt responds that the State may not rely on erroneous information maintained by a law enforcement agency to establish reasonable cause for stopping a car.

*Standard of Review.* When confronted with an alleged constitutional violation, we resolve the issue by making our own independent evaluation of the totality of the circumstances. *State v. Johnson*, 395 N.W.2d 661, 663 (Iowa App.1986); *State v. Conger*, 375 N.W.2d 278, 279 (Iowa App. 1985). Our review is de novo. *State v. Harlan*, 301 N.W.2d 717, 718 (Iowa 1981).

Defendant alleges a violation of his fourth amendment rights. The governing constitutional principles are well settled. The law, as outlined in *State v. Aschenbrenner*, 289 N.W.2d 618, 619 (Iowa 1980), provides:

> An officer must have reasonable cause to stop a vehicle. In order to establish reasonable cause when the grounds are challenged, the State must show that the officer had specific and articulable cause to support a reasonable belief that criminal activity may have occurred. Officers are bound by their true reason for making the stop. They may not rely on reasons they could have had but did not actually have. If the State fails in its burden, evidence taken as a result of the stop must be suppressed. (citations omitted)

Circumstances giving rise to suspicion or curiosity will not suffice. *State v. Dixon*, 241 N.W.2d 21, 23 (Iowa 1976). Where law enforcement authorities are cooperating in an investigation, the knowledge of one is presumed shared by all. *State v. Owens*, 418 N.W.2d 340, 342 (Iowa 1988); *State v. Schubert*, 346 N.W.2d 30, 32 (Iowa 1984).

*Reasonableness of Stop.* Ewoldt contends that knowledge of the inaccuracy of the Department of Transportation's records should be imputed to the officers who stopped him, thus making the stop unreasonable. Our review of the law reveals no Iowa case law that addresses this issue. The officers in this case had specific and articulable cause to support a reasonable belief that criminal activity may have

occurred. It is a crime to drive a car while one's license is revoked. Iowa Code § 321.218 (1987). Ewoldt was known by the officers to have had a recent OWI arrest. Conviction of this offense carries with it a mandatory license revocation. Iowa Code § 321J.4 (1987). Thus the officers in this case began with facts known personally to them which raised a suspicion as to the status of Ewoldt's license. The officers then followed up on this knowledge by seeking official data regarding the status of Ewoldt's driver's license. The body entrusted with the enforcement of the motor vehicle laws for the State of Iowa is the Department of Transportation. Iowa Code § 321.2 (1987). The Department is specifically charged with licensing drivers, Iowa Code § 321.174–.200, and is authorized to cancel, suspend, and revoke drivers' privileges. Iowa Code § 321.201–.215 (1987). The courts are required by law to forward to the Department any record of conviction for violation of traffic laws, making the Department the central repository of this information. Iowa Code § 321.207 (1987).

The Audubon County Sheriff's office was equipped with a computer that could access the data of the Departments of Public Safety and Transportation. The officers requested both an automatic and manual check on the status of Ewoldt's driver's license and they were informed that Ewoldt's license had been revoked. A police officer's sources of information must be reasonably trustworthy. *State v. Morris*, 227 N.W.2d 150, 152 (Iowa 1975). The Iowa Supreme Court has held that a mistaken basis for a stop will not necessarily make the stop invalid. *State v. Jackson*, 315 N.W.2d 766, 767 (Iowa 1982) (An officer stopped a vehicle for failure to display license plates when in fact the driver had appropriate paper plates. The court held that the officer's subsequent discovery that the driver had no driver's license should not have been suppressed.). Information sufficient to establish reasonable cause to stop is not defeated by an after-the-fact showing that the information was false. "A reasonable suspicion may be based on

articulable facts even if such facts are ultimately shown to be inaccurate or false." *Kelly v. State*, 721 S.W.2d 586, 587 (Tex.Ct. App.1986). The officers relied upon information compiled by the Departments of Public Safety and Transportation. They did not know, and could not reasonably be expected to have known, that the information conveyed to them was inaccurate. They had reasonable cause to stop Ewoldt's automobile, and evidence obtained as a result thereof should not have been suppressed.

REVERSED.