# State of Vermont v. Edmund A. Lanoue

[587 A.2d 405]

No. 88-533

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed January 25, 1991

*Jeffrey L. Amestoy,* Attorney General, and *Susan R. Harritt,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*David A. Howard,* Public Defender, Bennington, for Defendant-Appellant.

**Gibson, J.** Defendant appeals from his conviction of operating a motor vehicle while under the influence of intoxicating liquor in violation of 23 V.S.A. § 1201(a)(2). We affirm.

On September 17, 1987, at 12:46 a.m., an officer of the Bennington Police Department observed defendant operating a motor vehicle. The officer believed defendant's right to operate was under suspension, and this suspicion was verified by a Department of Motor Vehicles (DMV) computer check. The information provided by the computer check was later found to be incorrect. Pursuant to 23 V.S.A. § 110, defendant's right to operate had been suspended on August 13, 1987 for twice submitting insufficiently funded checks to the DMV. Although his right to operate was reinstated at 12:01 a.m. on September 17, 1987, this information was not transferred to the DMV computer until after the stop had been made. There is also confusion as to whether the DMV sent notice of this suspension to defendant's proper mailing address, and whether the DMV waived his reinstatement fee.

Defendant timely moved for suppression of all evidence obtained as a result of the stop, claiming that the stop violated Chapter I, Article 11, of the Vermont Constitution and the Fourth Amendment to the United States Constitution. The motion was denied at pretrial hearing and again at trial.

■ On appeal, defendant contends that the requisite cause for an investigative stop cannot be sustained when it is based upon incorrect information provided by the DMV. An after-the-fact finding that the information was incorrect will not, however, invalidate otherwise sufficient reasonable suspicion. See *State v. Ewoldt*, 448 N.W.2d 676, 678 (Iowa Ct. App. 1989) ("'reasonable suspicion may be based on articulable facts even if such facts are ultimately shown to be inaccurate'") (quoting *Kelly v. State*, 721 S.W.2d 586, 587 (Tex. Ct. App. 1986)); cf. *State v. Phillips*, 140 Vt. 210, 216, 436 A.2d 746, 749–50 (1981) (police knowledge at the time of arrest is what governs; an arrest or search cannot be justified by what the search discloses). Reasonable suspicion for an investigative stop can be sustained where the source of the information carries the requisite indicia of reliability. *State v. Kettlewell*, 149 Vt. 331, 335–36, 544 A.2d 591, 594 (1987).

This case is less extreme than *State v. Ryea*, 153 Vt. 451, 454, 571 A.2d 674, 676 (1990), where we upheld an investigative stop made by a state trooper who believed he had seen defendant's name posted at the state police barracks on a list of drivers

whose licenses had been suspended. A license check made after the stop revealed that defendant's license had been reinstated nearly two months earlier. Thus, as in the instant case, the stop in *Ryea* was based on out-dated information. Although the precise issue raised in the instant case was not presented in *Ryea*, it is noteworthy that this Court held in *Ryea* that the trooper was justified in making the stop while he checked the status of defendant's license.

The precise issue raised by defendant in the instant case was raised in *Ewoldt*, where the Iowa Court of Appeals sustained reasonable suspicion for an investigative stop based upon information provided by that state's Department of Transportation even though the information was later found to be inaccurate. The Department was held to be a reasonably trustworthy source of information where the police officers did not know, and could not reasonably be expected to have known, that the information was inaccurate. *Ewoldt*, 448 N.W.2d at 678. Although the court's analysis focused upon the fact that the officers sought information from a source officially recognized as reliable, both its reasoning and its holding rely on the fact that responsibility for developing the information was entrusted by statute to a department distinct from the police department.

The officer in the present case sought verification of his suspicion from a source which is similarly known to be reliable. The DMV is authorized to regulate the registration of motor vehicles and the licensing of drivers, including the suspension and revocation of the right to operate. 23 V.S.A. §§ 102, 301–516, 671–675. In conjunction with its regulatory authority, the DMV is charged with keeping complete records concerning the status of registrations and drivers' licenses, and with making these records available to the public and government agencies. 23 V.S.A. §§ 102(a)(6), 104, 109. Thus, the DMV is recognized as an official source for such information, independent of law enforcement agencies.

Defendant argues that, even though the collective knowledge of the police force may be pooled and imputed to the arresting officer as a basis for reasonable suspicion, there can be no reasonable suspicion if information provided by the police network is incorrect. The collective knowledge theory applies, however, only where incorrect information is chargeable to a

law enforcement agency. See *People v. Jennings*, 54 N.Y.2d 518, 520, 430 N.E.2d 1282, 1283, 446 N.Y.S.2d 229, 230 (1981) (arrest invalid when "arresting officer acts upon information in criminal justice system records . . . which, *through fault of the system*, has been retained in its records after it became inapplicable") (emphasis added); see also 2 W. LaFave, Search & Seizure § 3.5(d), at 21–22 (2d ed. 1987) (fundamental point is not whether the arresting officer was at fault, but whether the law enforcement system was at fault).

█ In the cases relied upon by defendant, incorrect information was provided by systems that were under the control of law enforcement agencies. In both *Jennings*, 54 N.Y.2d at 521, 430 N.E.2d at 1284, 446 N.Y.S.2d at 231, and *United States v. Mackey*, 387 F. Supp. 1121, 1122–25 (D. Nev. 1975), arrests occurred because of incorrect information provided by the National Crime Information Center. Information retained by that system is submitted and used by state and federal law enforcement agencies, and these agencies are responsible for the accuracy, validity, and completeness of the records. See *Mackey*, 387 F. Supp. at 1123 (explanation of the purpose and function of the National Crime Information Center); see also *Whiteley v. Warden*, 401 U.S. 560, 568 (1971) (arrest by fellow officers illegal where based on another officer's invalid warrant); *Carter v. State*, 18 Md. App. 150, 156, 305 A.2d 856, 860 (1973) (completely erroneous information was chargeable to the police team). Accordingly, we hold that incorrect information provided by the DMV is not chargeable to a law enforcement agency.

█ Defendant alternatively argues that this case should be remanded for factual findings pertaining to the suspension procedures followed by the DMV. This argument is, however, conditioned upon these procedures being essential to determining whether evidence should be suppressed. Inasmuch as they are not essential to the suppression issue, remand would not be appropriate.

*Affirmed.*

**Morse, J.,** dissenting. The Court affirms defendant's conviction on a distinction that, as far as I can see, is irrelevant to the issue presented on appeal. That issue is whether a mistake

by Vermont Department of Motor Vehicles (DMV) in failing to timely reinstate defendant's privilege to operate was significant enough to warrant a finding that defendant's arrest was improperly obtained. On this issue, the "45-minute" information gap is irrelevant and not the basis for defendant's claim. When confronted with its error, DMV reinstated defendant's license to a time that happened to be 45 minutes before the stop. But the true gap, if defendant is correct, is between the time—several weeks before—when DMV was supposed to reinstate his license and the time it actually did reinstate.

Noting that the police did not make the alleged mistake, the Court reasons that the police should not be held accountable for the mistake. DMV and the police work together in a coordinated system. It is artificial to break the agencies apart when viewing the consequences to the motoring public of errors in recordkeeping. The state should not benefit from compartmentalizing its responsibility to the public into separate but obviously interdependent agencies without some rationale to support this result. From the standpoint of fairness, it makes no difference that a motorist is victimized by misfunctions in recordkeeping at DMV rather than at the Department of Public Safety.

The police "may conduct warrantless stops when 'specific and articulable facts . . . , taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Schmitt*, 150 Vt. 503, 507, 554 A.2d 666, 668 (1988) (quoting *State v. Lambert*, 146 Vt. 142, 143, 499 A.2d 761, 762 (1985)). The stop may be based solely on thirdhand hearsay information. *Id.* To evaluate whether reasonable suspicion existed, we look at the collective knowledge of the police at the time of the stop rather than the knowledge of the individual officer making the stop. See *State v. Phillips*, 140 Vt. 210, 216, 436 A.2d 746, 749–50 (1981) (stating that this is the rule when evaluating probable cause and limiting its application to situations where there are "some minimal communications between officers" prior to the initial detention). This is the "fellow-officer rule" derived from *Whiteley v. Warden*, 401 U.S. 560, 568 (1971). However, if reasonable suspicion can be supported by imputed knowledge, the converse is also true: erroneous knowledge of the collectivity is charged to the individual, *id.*, and there is no

"good faith exclusion" based on the fact that the individual did not know that he or she was acting under erroneous information. *People v. Jennings*, 54 N.Y.2d 518, 523, 430 N.E.2d 1282, 1285, 446 N.Y.S.2d 229, 232 (1981).

The Court relies on one intermediate appellate court decision, *State v. Ewoldt*, 448 N.W.2d 676 (Iowa Ct. App. 1989), to hold that police should be able to rely on erroneous information supplied by DMV to establish probable cause. The other cases that the Court cites—*Whiteley, Jennings, Carter v. State*, 18 Md. App. 150, 305 A.2d 856 (1973); and *United States v. Mackey*, 387 F. Supp. 1121 (D. Nev. 1975)—do not require this result. In all the cited cases, courts excluded evidence gathered as a result of police reliance on erroneous police-generated information, but nothing in the language or reasoning of those cases restricts the rule solely to police-generated information. The real issue is the reliability of the information not who generated it.

In an age of computerized data processing, we cannot blindly assume that all information generated by "official channels" is per se reliable. See *People v. Ramirez*, 34 Cal. 3d 541, 552, 668 P.2d 761, 768, 194 Cal. Rptr. 454, 461 (1983) (en banc) (holding that a police officer's good faith reliance on a recalled warrant was insufficient to establish probable cause; because police officers rely on elaborate computerized systems that catalogue and dispatch incriminating information, there is an enhanced responsibility to keep "official channels" error free). Although we treat computerized transmissions as if they came from an impeccable source, a kind of super-reliable informant, we have no information on the accuracy of DMV records. Moreover, there are no controls on the accuracy of information submitted to or generated by DMV. Allowing erroneous information to be used as the basis for stops means that DMV has no incentive to exercise care in its recordkeeping and license reinstatement functions.

In *Jennings*, the court found no probable cause where a police officer relied on erroneous information supplied by the National Crime Information Center. It referred to this as "information in criminal justice system records . . . which, through fault of the system, has been retained in its records after it became inapplicable." 54 N.Y.2d at 520, 430 N.E.2d at

1283, 446 N.Y.S.2d at 230. This language is not narrow: it seems to say that where police rely on a "system" of information-gathering sources, and those sources err, the errors are imputed to the police. DMV is clearly within such a system.

At least one court has explicitly taken a broader view of the law enforcement "system." Applying the fellow-officer rule, the court in *State v. Fields*, 785 P.2d 611, 612–13 (Colo. 1990) (en banc), imputed to an arresting officer a parole board's error in failing to issue a parole violation warrant and suppressed evidence gathered pursuant to the arrest.

If we are concerned about the reliability of information, we need not establish a per se rule that reasonable suspicion or probable cause can never be grounded on erroneous information provided by the system. In this case, however, the record is insufficient to make a proper inquiry.

DMV reinstated defendant's suspended license at 12:01 a.m. on September 17, 1987; he was stopped for DLS at 12:46 a.m. on the same day. However, the problem is not merely a 45-minute information gap. Defendant's driver's license had been suspended in August 1987 for a bounced check used as payment to register his car. After defendant paid that fee, his license was not reinstated because he had not paid a reinstatement fee. Defendant testified that he had called DMV in August and was told he would not have to pay a reinstatement fee. However, by a letter dated August 20, 1987, DMV notified defendant otherwise. The trial court did not make any findings about the reported telephone conversation. After the arrest, defendant contacted DMV, which then reinstated defendant's license effective September 17, 1987. The reinstatement fee was waived apparently because the notices may have been sent to an improper address. DMV's prompt action on September 17th suggests it acknowledged it had made an error. In any event, the court did not make findings about why defendant's license was not reinstated, if it should have been, prior to September 17th.

I am at a loss on the present record to decide whether DMV was at fault for not reinstating defendant's license prior to September 17th. I would therefore remand for findings on this critical issue.

I am authorized to say that Justice Dooley joins in this dissent.