597 A.2d 486

**Rickey Anthony HENDERSON**

v.

**STATE of Maryland.**

**No. 41, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Oct. 29, 1991.

Certiorari Denied Feb. 12, 1992.

20

Timothy J. Sullivan, College Park, for appellant.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before BISHOP, WENNER and CATHELL, JJ.

WENNER, Judge.

Appellant, Rickey A. Henderson, chose to flee from an orchard with fruit before the tree became poisonous. *See,* *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Appellant had been charged with importation of cocaine, possession with intent to distribute cocaine, and possession of cocaine. He filed a motion to suppress evidence he claimed had been obtained in violation of his constitutional rights. The motion was denied. Subsequently, upon an agreed statement of facts, appellant was convicted by the Circuit Court for Prince George's County of all charges against him. The court sentenced him to twenty years of imprisonment, with all but five years suspended in favor of five years probation. This appeal followed. Appellant has presented multiple issues for us to consider, and we shall discuss each of them in turn. We begin by considering whether the contraband dropped by appellant during a chase was the fruit of an unconstitutional seizure. Before answering this question, we shall have to determine when, from a Fourth Amendment standpoint, appellant's seizure occurred.

Ultimately, we shall affirm the judgments of the circuit court.

## FACTS

On April 5, 1989, as appellant got off an Amtrak train at the New Carrollton, Maryland Amtrak Station, his misfortune began. Unbeknownst to appellant, a drug interdiction task force had set up shop at the station. One of its members, Corporal Wilson of the Prince George's County Police Department, testified at the suppression hearing. The corporal testified that he observed appellant get off the train and move toward an escalator. The corporal followed appellant down the escalator. When they reached the bottom, the corporal began to identify himself as a police officer. As he did so, appellant fled. The corporal gave chase. Appellant ran out of the station and into a wooded area. During the chase, Detective Kerr, another member of the task force, passed Corporal Wilson. Kerr pursued appellant into the wooded area. After he had run about half a mile, appellant dropped what Kerr described as a white object. Appellant was ultimately caught by Detective Kerr and arrested. After he was arrested, the task force searched for and found the white object appellant had dropped during the chase. It was a torn plastic bag found to contain cocaine. As we said earlier, we shall determine from a Fourth Amendment standpoint when appellant was seized.

## BACKGROUND OF THE LAW

The question of when the seizure of a person who is attempting to flee from the police occurs was addressed by the Supreme Court in *Michigan v. Chesternut,* 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). In *Chesternut,* the Court adopted the so-called *Mendenhall* test, first penned by Justice Stewart in *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). According to *Mendenhall,* "A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.,* 446 U.S. at 554, 100 S.Ct. at 1877.

In *Hawkins v. State,* 77 Md.App. 338, 550 A.2d 416 (1988), relying on *Chesternut,* we held that a seizure occurred when, upon noticing the approach of a plain clothes officer, one begins to run away, and the officer gives chase shouting, "Stop, police". In *Hawkins,* we held the officer lacked probable cause for the seizure, thus illegal contraband discarded by the defendant during the chase was inadmissible.

Two years later, in *State v. Lemmon,* 318 Md. 365, 568 A.2d 48 (1990), the Court of Appeals, also relying primarily on *Chesternut*[1], addressed the issue of when a fleeing defendant is seized. The Court determined in *Lemmon* that the defendant was seized before discarding illegal contraband subsequently admitted at trial. The facts deemed relevant by the Court in determining that a seizure took place were: (1) the approach of two officers; (2) the command by the officers to, "come here"; (3) the immediate pursuit by the officers when Lemmon ran; (4) the attempt to set up a blockade with a police car when it was apparent Lemmon was getting away; (5) the joinder of a third officer in the posse; (6) leaving the police car unattended; and (7) the attempt by one of the pursuers to circumvent a possible line of flight. *Lemmon,* 318 Md. at 374, 568 A.2d 48.

Very recently, in *California v. Hodari D.,* — U.S. —, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991),[2] the Supreme Court somewhat redefined the definition of what, for Fourth Amendment purposes, constitutes a seizure. The facts of *Hodari D.* are quite similar to those before us in *Hawkins,* before the Court of Appeals in *Lemmon,* and are again before us in the case *sub judice.* In *Hodari D.,* while patrolling a high-crime area, police officers came upon a number of youths huddled around a parked car. When the youths saw the officers approaching, they fled. The officers gave chase. While running, Hodari discarded what

---

1. We ... turn to *Chesternut* to determine the matter of the seizure of Lemmon. *Lemmon,* 318 Md. at 372, 568 A.2d 48.

2. *See Johnson v. State,* 87 Md.App. 579, 590 A.2d 1069 (1991).

appeared to be a small rock which was later found to be crack cocaine. Ultimately, the officers caught Hodari, handcuffed him, and called for assistance.

The Supreme Court phrased the issue before it as "whether, at the time [Hodari] dropped the drugs, Hodari had been 'seized' within the meaning of the Fourth Amendment." *Id.*, —— U.S. at ——, 111 S.Ct. at 1549. In other words, when a person is neither physically restrained nor voluntarily submits to a police officer's show of authority, can it be said under the Fourth Amendment that that person has been seized? The Court succinctly held that seizure "does not remotely apply ... to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure." *Id.*, —— U.S. at ——, 111 S.Ct. at 1550. [3]

■ With *Hodari D.* firmly in mind, we turn to the case *sub judice*. Appellant contends that, for Fourth Amendment purposes, he was seized when Corporal Wilson and other police officers pursued him after he began to run.[4] In light of *Hodari D.*, it is clear that appellant was not seized until Detective Kerr physically restrained him. Until then, appellant was neither under the physical control of the officers, nor was he acquiescing to their authority.[5] Therefore, we hold that appellant was not seized until *after* he dropped the contraband. Thus, the contraband was not the fruit of an illegal seizure.

---

**3.** The Court also said that an arrest did not take place since "[a]n arrest requires *either* physical force ... or, where that is absent, *submission* to the assertion of authority." *Id.*, —— U.S. at ——, 111 S.Ct. at 1551.

**4.** Interestingly, at oral argument counsel for appellant argued that appellant was seized when Corporal Wilson's and appellant's shoulders bumped accidentally while going down on an escalator in the station.

**5.** As we need not decide it, we express no opinion whether the officers' actions constitute a sufficient show of authority that, should appellant have acquiesced, it could be said he had been seized.

*Article 26, Md. Declaration of Rights*

■ Appellant also contends that there are independent state grounds (*ie.*, Art. 26 of the Md. Declaration of Rights) upon which he is entitled to have the judgments of the circuit court reversed. We shall briefly consider his contention.

The Court of Appeals has previously considered whether Article 26 provides greater protection than the Fourth Amendment. In *Gahan v. State*, 290 Md. 310, 430 A.2d 49 (1981), the Court said:

> The [Court of Appeals of Maryland] cases clearly recognize the similarity between the Fourth Amendment to the Constitution of the United States and our own older Declaration of Rights, Art. 26, which grew out of the same historical background. Because of this similarity the consistent position of this Court has been that 'decisions of the Supreme Court on the kindred 4th Amendment are entitled to great respect.'

*Gahan*, 290 Md. at 321, 430 A.2d 49, *citing Givner v. State*, 210 Md. 484, 498, 124 A.2d 764 (1956), *quoting Lambert v. State*, 196 Md. 57, 62, 75 A.2d 327 (1949).

The Court has consistently held Article 26 to be in *pari materia* with the Fourth Amendment of the Constitution of the United States. In fact the Court has said explicitly:

> It has been said by this Court in a number of cases that this Article [Art. 26] is in *pari materia* with the Fourth Amendment of the Constitution of the United States.

*Givner*, 210 Md. at 492, 124 A.2d 764; *see also Gahan* at 319–20, 430 A.2d 49; *McMillian v. State*, 65 Md.App. 21, 30–31, n. 2, 499 A.2d 192 (1985).

Consequently, we hold that Article 26 of the Md. Declaration of Rights does not afford appellant any greater protection than that of the Fourth Amendment to the United States Constitution.

## RETROACTIVE APPLICATION OF HODARI D.

■ Finally, appellant contends that we should not apply the holding of *Hodari D.* to this case because it constitutes

a "clean break from the past." As such, appellant contends that *Hodari D.* prejudiced his reliance upon existing law in formulating his defense. We point out to appellant that "[a]s a general rule, a change in law will be given effect while a case is on direct review." *Potts v. State,* 300 Md. 567, 581, 479 A.2d 1335 (1984), *citing Solem v. Stumes,* 465 U.S. 638, 642, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984); *United States v. Johnson,* 457 U.S. 537, 562, 102 S.Ct. 2579, 2593, 73 L.Ed.2d 202 (1982). Although *Hodari D.* is somewhat of a divergence from *Chesternut,* it is not a "clean break from the past" nor does it create an entirely new legal standard. As such, it does not warrant a departure from the general rule.

## CONCLUSION

For the aforegoing reasons, we affirm the judgments of the circuit court.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.