302 F.3d 262
 Nelson O. Robles, Plaintiff-Appellant,
v.
Prince George's County, Maryland; James Rozar; Antonio Debarros, Defendant-Appellees.
Nelson O. Robles, Plaintiff-Appellee,
v.
Prince George's County, Maryland; James Rozar; Antonio Debarros, Defendants-Appellants.
 No. 01-1662.
 No. 01-1728.
 United States Court of Appeals, Fourth Circuit.
 Argued June 5, 2002.
 Decided August 26, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED ARGUED: Christopher Allen Griffiths, Roberts & Wood, Riverdale, Maryland, for Appellant. William Antoine Snoddy, Associate County Attorney, Prince George's County Office of Law, Upper Marlboro, Maryland, for Appellees. ON BRIEF: Terrell N. Roberts, III, Roberts & Wood, Riverdale, Maryland, for Appellant. John A. Bielec, Deputy County Attorney, Prince George's County Office of Law, Upper Marlboro, Maryland, for Appellees.
 Before WILKINSON, Chief Judge, MOTZ, Circuit Judge, and BALDOCK, Senior Circuit Judge of the United States Court of Appeals for the Tenth Circuit, sitting by designation.
 Affirmed in part, reversed in part, and remanded by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge MOTZ and Senior Judge BALDOCK joined.
 OPINION
 WILKINSON, Chief Judge.
 
 
 1
 Plaintiff Nelson Robles claims that police officers Antonio DeBarros and James Rozar violated his state and federal constitutional rights by tying him to a metal pole in a deserted parking lot and abandoning him there for approximately 10 minutes. He seeks damages from the officers and from Prince George's County, Maryland ("PGC") pursuant to 42 U.S.C. § 1983, as well as under the Maryland Constitution and state law for the intentional infliction of emotional distress. The district court granted summary judgment to the officers on the federal claims on the basis of qualified immunity and on the emotional distress claim as a matter of law. A jury found for Robles on the state due process claim and awarded compensatory and punitive damages in the amount of $647,000. The district court granted a remittitur of the damage awards to $240,000, or in the alternative a new trial. Robles opted for a new trial limited to the amount of damages and was awarded $40,000.
 
 
 2
 On appeal, defendants contend that the brief restraint of plaintiff was nothing more than a prank that, however misdirected, did not rise to the level of a constitutional violation. Plaintiff contends in turn that the damages he suffered for this indignity merited far more than the monies he received. The district court and the jury in its final award correctly perceived that the justice of the case lay somewhere in between. For the reasons that follow, we affirm in large part and remand with directions to modify the judgment only to the extent of reversing the award of punitive damages against the county because such damages are impermissible under Maryland law.
 
 I.
 
 3
 At approximately 3:30 a.m. on August 17, 1996, PGC police officers Antonio DeBarros, Kevin Hodge, and Lt. James Rozar responded to a disorderly conduct noise complaint at an apartment complex in Langley Park. Upon obtaining identification from three men found drinking beer on the premises, the officers arrested Nelson Robles on an outstanding traffic warrant issued by neighboring Montgomery County.
 
 
 4
 After taking Robles into custody, the officers attempted to arrange a prisoner exchange with Montgomery County's police department. Formal custody transfers generally require that the arrested individual be taken to a commissioner in the county where arrested and then transferred by the sheriff's department to the county that issued the warrant. Because this procedure is time consuming, officers sometimes arrange informal transfers of arrestees at the county line. Rozar and DeBarros requested several times that the Montgomery County dispatcher send someone to meet them for such an exchange, but these requests were denied. The officers were told that the Montgomery County Police Department was too busy that evening to spare officers for a transfer.
 
 
 5
 Skeptical of this explanation, Rozar and DeBarros drove Robles to the deserted Hillandale Shopping Center parking lot in Montgomery County. There they tied Robles to a metal pole using three pairs of flex-cuffs and left a note at his feet explaining that there were outstanding warrants for him in Montgomery County. The officers then drove out of sight of Robles and placed a call to the non-emergency number of the Montgomery Police Department reporting the situation. They did not identify themselves to the operator or disclose the fact that PGC officers had tied Robles to the pole. Officers from Montgomery County arrived approximately 10 to 15 minutes later to untie Robles and take him into custody.
 
 
 6
 On October 26, 1998, Robles filed a nine-count complaint against Rozar, DeBarros, and PGC alleging violation of his civil rights under both the Maryland and U.S. Constitutions, as well as intentional infliction of emotional distress under state law. The case was removed to federal court in January 1999. The district court then granted defendant's motion to bifurcate and stay discovery as to Count IX which alleged direct liability against the county for the unlawful seizure pursuant to Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
 
 
 7
 Defendants filed a motion for summary judgment as to Counts I through VIII, which the court granted in part and denied in part. Specifically, the court held that defendants possessed qualified immunity as to Counts II-IV, which asserted liability under 42 U.S.C. § 1983, but that Counts V-VIII, alleging violation of Robles' rights under the Maryland Constitution, survived because Maryland law provides no official immunity for state constitutional violations. The court also granted summary judgment to defendants on Count I, the intentional infliction of emotional distress claim, because Robles could not establish the elements of the tort as a matter of law.
 
 
 8
 Counts V-VIII were tried to a jury, which returned a verdict in Robles' favor on the state constitutional due process claim. The jury awarded Robles $647,000 in compensatory and punitive damages. Robles filed a motion to alter judgment, or alternatively for a new trial, arguing that the jury's verdict was contrary to law because it failed to find, in addition to the state due process violation, that he had been subject to an unconstitutional seizure under Maryland law. The court denied the motion following a hearing. Robles also filed a motion for reconsideration of the court's order granting defendants' motion for summary judgment on the basis of qualified immunity with regard to the § 1983 claims. The court denied that motion as well.
 
 
 9
 The district court subsequently granted defendants' motion for remittitur, or in the alternative a new trial, based on excessiveness of the verdict. Robles rejected the court's remittitur of the award to $240,000. The second trial was limited to the issue of damages for the violation of Robles' state constitutional right to due process. The jury awarded Robles $25,000 in compensatory damages against Rozar, DeBarros, and PGC. It awarded $5,000 in punitive damages against Rozar and $10,000 in punitive damages against PGC. On May 9, 2001, the parties filed a stipulation of dismissal of the Monell claim against PGC.
 
 
 10
 Robles filed a motion to recover his attorneys' fees and expenses under 42 U.S.C. § 1988. He argued that in view of the jury award in his favor, he was the "prevailing party." Defendants responded that Robles was not the prevailing party for purposes of § 1988 because he had not succeeded on any of his federal claims. The court agreed with defendants and denied Robles' motion to award attorney's fees. Robles appeals.
 
 II.
 
 11
 We begin by considering Robles' federal constitutional claims. In order to make out a valid claim under 42 U.S.C. § 1983, Robles must show that (1) the actions of the police officers deprived him of an actual constitutional right and (2) that the right was clearly established at the time of the alleged violation. Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Only if both parts of this inquiry are satisfied can Robles overcome the defendants' assertion of qualified immunity. Id.
 
 A.
 
 12
 Robles contends that the PGC officers violated his constitutional right to be free from unreasonable seizures. He asserts that "[b]ecause there was no legitimate reason to handcuff [him] to a pole and abandon him, the manner of his seizure was unreasonable."
 
 
 13
 The Fourth Amendment "governs claims of excessive force during the course of an arrest, investigatory stop, or other `seizure' of a person." Riley v. Dorton, 115 F.3d 1159, 1161 (4th Cir.1997) (en banc). However, this court has rejected any concept of a continuing seizure rule, noting that "the Fourth Amendment ... applies to the initial decision to detain an accused, not to the conditions of confinement after that decision has been made." Id. at 1163 (internal citations and punctuation omitted). Once the single act of detaining an individual has been accomplished, the Amendment ceases to apply. Id.
 
 
 14
 Robles acknowledges that the police had probable cause for his arrest. The officers were acting on the basis of an outstanding warrant issued by Montgomery County which contained five charges against Robles stemming from a vehicular hit and run accident the previous year. Robles also admits that Rozar and DeBarros did not use excessive force when they took custody of him. The officers made clear the reason for his arrest, handcuffed him, and placed him in the back of a police cruiser without incident.
 
 
 15
 Thus, by the time Robles was brought to Montgomery County, his arrest had been completed and the circumstances of that arrest comported with Fourth Amendment safeguards. Robles' status at the time of this incident was that of a pretrial detainee, and the Fourth Amendment does not extend to such situations.[1] Such a detainee may assert other rights, of course, and it is to those that we now turn.
 
 B.
 
 16
 As a pretrial detainee, Robles' treatment and the conditions of his restraint are evaluated under the Due Process Clause of the Fourteenth Amendment. Riley, 115 F.3d at 1166. In order to conclude that Robles' rights under this clause were violated, it is necessary to find that the officers' actions amounted to punishment and were not merely "an incident of some other legitimate governmental purpose," Bell v. Wolfish, 441 U.S. 520, 538, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and that the injury resulting from their actions was more than de minimis.[2] Riley, 115 F.3d at 1167.
 
 
 17
 Defendants contend that their actions cannot amount to punishment because they "failed to show any expressed intent" to punish and the "purpose of [their] actions was to insure that the [transfer of] custody" be effected. In the absence of an actual intent to punish, however, the due process determination turns on whether the "pretrial detention is reasonably related to a legitimate governmental objective" or "if it is arbitrary or purposeless." Bell, 441 U.S. at 539, 99 S.Ct. 1861. An action may be reasonably related to a legitimate governmental purpose if "an alternative purpose to which [the act] may rationally be connected is assignable for it" and the action does not appear "excessive in relation to the alternative purpose assigned." Id. at 538, 99 S.Ct. 1861 (internal quotes and citation omitted).
 
 
 18
 The police behavior here was not reasonably related — indeed it was entirely unrelated — to any legitimate law enforcement purpose. Nothing the officers did served to enhance their own safety or the safety of others, or to ensure the presence of plaintiff at trial. Moreover, it was hardly necessary to tie someone to a metal pole in a deserted parking lot, for however brief a time, in order to effect a transfer of custody. The officers' actions thus served no conceivable law enforcement purpose, and the defendants in fact decline to justify their behavior on that basis. Even a so-called prank that fails to serve any "legitimate governmental objective" can constitute a due process infraction. Id. at 539, 99 S.Ct. 1861. Even if the officers' action here might be seen as merely immature, it is not any less a constitutional violation.
 
 
 19
 Lastly, for Robles' rights to have been violated by this arbitrary and purposeless act, he needs to have suffered more than a de minimis injury. Riley, 115 F.3d at 1167. Robles testified that he felt frightened, vulnerable, and humiliated when left alone and immobile in the dark parking lot. He asserts that in the months following the incident he had trouble sleeping and was scared to leave his home. Three corroborating witnesses testified to an abrupt change in Robles' daily habits immediately following the incident. The defendants respond that "[b]eing upset or disappointed regarding how one is treated by a police officer cannot amount to anything more than a de minimis injury." They argue that their actions caused no more than minor anxiety which should not be compensable.
 
 
 20
 While Robles' injury certainly needs to be "something more than trifling," Riley, 115 F.3d at 1167, "mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983." Carey v. Piphus, 435 U.S. 247, 264, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). And while a litany of subjective complaints may not be more than de minimis, Riley, 115 F.3d at 1167-68, any reasonable person would have been upset by what happened here. Robles was tied up in a dark and deserted location in the middle of the night. He did not know when or if anyone would come to rescue him or who might discover him. The resulting injury was more than de minimis.
 
 
 21
 Because the officers' actions were not reasonably related to any law enforcement purpose and Robles suffered more than a de minimis injury as a result of these actions, Robles' Fourteenth Amendment right to due process was violated.
 
 C.
 
 22
 Even though the officers' actions deprived Robles of an actual constitutional right, Rozar and DeBarros may still be entitled to qualified immunity if that right was not clearly established at the time of the incident. Wilson, 526 U.S. at 609, 119 S.Ct. 1692. Police officers performing discretionary acts "generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. (citations omitted). Thus, liability in this case turns on what notice the PGC officers had that their conduct violated federal constitutional law.
 
 
 23
 Robles contends that his rights under the Due Process Clause were clearly established by Bell. He asserts that a "reasonably well trained officer in the position of the defendants would have known that it was unconstitutional to subject an individual to conditions amounting to punishment." However, as the district court recognized, a greater degree of specificity is required to overcome a defense of qualified immunity. Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Without such a requirement, "[p]laintiffs would be able to convert the rule of qualified immunity that [the] cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Id.
 
 
 24
 Although notice does not require that the "very action in question has previously been held unlawful," it does mean that "in the light of pre-existing law the unlawfulness must be apparent." Wilson, 526 U.S. at 615, 119 S.Ct. 1692 (citation omitted). The cases cited by plaintiff on this point are inapposite. They involve instances where detainees were subject to physical abuse or prolonged and inhumane conditions of detention. See Putman v. Gerloff, 639 F.2d 415 (8th Cir.1981) (plaintiffs handcuffed together and left in sitting position for 12 hours); Fisher v. Wash. Metro. Transit Auth., 690 F.2d 1133 (4th Cir.1982) (plaintiff detained naked in view of members of the opposite sex); Jefferson v. Ysleta Indep. Sch. Dist., 817 F.2d 303 (5th Cir.1987) (plaintiff tied to chair for an entire school day). Although the officers' actions in this instance were foolish and unorthodox, it is also not clear that at the time they acted they should have reasonably known that their conduct violated Robles' constitutional rights.
 
 
 25
 The officers should have known, and indeed did know, that they were acting inappropriately. But whether they understood their conduct violated clearly established federal law is an altogether different question. The Constitution is not a "font of tort law" to be "superimposed upon whatever systems may already be administered by the States." Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The officers' conduct violated police regulations as well as state law and was dealt with under those provisions. But not every instance of inappropriate behavior on the part of police rises to the level of a federal constitutional violation. Going forward, officers are now on notice that the type of Keystone Kop activity that degrades those subject to detention and that lacks any conceivable law enforcement purpose implicates federal due process guarantees. Going backward, however, and imposing retrospective liability would eviscerate the requirement of notice at the core of the qualified immunity defense.
 
 III.
 
 26
 Robles next contends that the district court abused its discretion under Fed. R.Civ.P. 59(a) when it reduced the jury's combined compensatory and punitive damage awards of $647,000 and in the alternative ordered a new trial. Robles rejected the court's remittitur of $240,000 and opted for a new trial where the jury awarded him $40,000 in compensatory and punitive damages.
 
 
 27
 The decision as to whether damages are excessive and should be subject to remittitur is "entrusted to the sound discretion of the district court," and such determinations "will be reversed on appeal only upon a showing of abuse of discretion." Cline v. Wal-Mart Stores, 144 F.3d 294, 305 (4th Cir.1998). In accordance with this standard, this Court will "give the benefit of every doubt to the judgment of the trial judge." Id. (internal citation omitted).
 
 
 28
 Although Robles asserts that the lower court "did not articulate any meaningful reason for the reduction" in compensatory damages from $150,000 to $80,000, the court in fact gave a number of reasons for its decision. Those factors included the brevity of Robles' detention, the absence of any physical abuse, and that, although Robles did suffer from emotional distress, no medication or counseling was required to resolve it. The record amply supports the district court's perspective. Plaintiff never made any claim for lost wages or medical treatment in connection with this 10 minute incident, nor did he see any type of doctor about it until three years later on the advice of his lawyer. Finding the jury's award of $150,000 in compensatory damages to be excessive lay within the discretion of the district judge.
 
 
 29
 With respect to the punitive award, Robles contends that the Court erred in not considering the seven factors listed in Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), for assessing the excessiveness of punitive awards. However, the Supreme Court in that case was merely passing judgment on the sufficiency of the factors used by Alabama courts to safeguard parties' rights, not prescribing a test to be used by all courts. It is well established that remittitur should be ordered when the jury award will "result in a miscarriage of justice." Cline, 144 F.3d at 306. Here, the same underlying factors which led to the reduction of the compensatory award — the brevity of detention, the total absence of any physical abuse, and the lack of any treatable mental or emotional condition — also supported the district court's view that "it would be a miscarriage of justice to impose punitive damages higher than" $160,000. The lower court properly assessed the punitive award against the Cline standard in finding the $497,000 award to be excessive.
 
 IV.
 
 30
 We next turn to Robles' claim that the lower court erred in refusing to award attorney's fees under 42 U.S.C. § 1988. Under The Civil Rights Attorney's Fees Awards Act of 1976, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs" of bringing a § 1983 action. 42 U.S.C. § 1988(b). We review the district court's denial of fees for abuse of discretion. Johnson v. City of Aiken, 278 F.3d 333 (4th Cir.2002).
 
 
 31
 In Johnson, the court considered the case of several plaintiffs who recovered damages against an individual police officer and the City of Aiken for an unlawful assault and vehicular search by city police officers. Most of the plaintiffs' federal claims were dismissed on the basis of qualified immunity, and they recovered only nominal damages of 35 cents on the sole surviving federal count. Id. at 336. Even though plaintiffs received a substantial monetary award on their pendent state law claim, the court found that they were not prevailing parties entitled to collect attorney's fees under § 1988. Id. at 338.
 
 
 32
 Robles contends that he is entitled to an award of his attorney's fees because he prevailed on his state law due process claim. But, "plaintiffs who do not prevail on their federal claims but achieve success on supplemental state law claims are not prevailing parties under § 1988, and are therefore not entitled to an award under that statute." Id. at 336. Robles' Fourth Amendment and Due Process claims were dismissed on summary judgment. His Monell claim was voluntarily dismissed, and thus never addressed by the district court. Robles did not prevail on any federal claims and the district court did not abuse its discretion in denying him attorney's fees.
 
 V.
 
 33
 We now turn to the issues raised by defendants in their cross-appeal. We first examine defendants' contention that the district court should have dismissed Robles' state constitutional claims. We believe, however, that the jury was entitled to find defendants violated Robles' Article 24 right to due process under the Maryland Constitution.
 
 
 34
 Article 24 and the Fourteenth Amendment of the U.S. Constitution are construed as parallel with each other. Williams v. Prince George's County, 112 Md.App. 526, 685 A.2d 884, 895 (1996). Since officers Rozar and DeBarros did violate Robles' due process right under the Fourteenth Amendment, they likewise violated his state constitutional right under Article 24. Robles' federal constitutional claim failed because the officers were entitled to qualified immunity under federal law. However, "[i]n Maryland, qualified immunity does not apply to constitutional claims." Id. at 894. Thus, the jury was entitled to find for Robles on his state due process claim.
 
 VI.
 
 35
 Lastly, we examine defendants' assertion that punitive damages should not have been allowed against either PGC or the individual officers.
 
 A.
 
 36
 Robles argues that punitive damages were properly allowed against PGC. He asserts that the jury found the county liable on a theory of respondeat superior for a malicious constitutional tort committed by Rozar and DeBarros. While such an act may subject the officers to liability for punitive damages, Maryland law disallows any such assessment of punitive damages against a county. Section 5-303(c)(1) of the Local Government Tort Claims Act clearly states that "[a] local government may not be liable for punitive damages." Local Government Tort Claims Act ("LGTCA"), Md. Cts & Jud. Proc. Art. § 5-303(c)(1). Robles contends that the LGTCA applies not to "the County's liability for constitutional torts under the doctrine of respondeat superior" but only to "its duty to indemnify its employees." The Act was amended in 2001 however to make clear that "the total liability of a local government, directly or otherwise, in an action arising from tortious acts or omissions, may not exceed the limits" set by the LGTCA. Md. Acts 2001, c. 286, §§ 2, 3. The amending language, together with the explicit prohibition against the imposition of punitive damages on local governments, requires that we reverse the district court's determination that such damages should be allowed.
 
 B.
 
 37
 While Maryland law shields local governments from liability for punitive damages, a similar protection does not exist for individual officers. Punitive damages are available against individuals upon a showing of actual malice. Bowden v. Caldor, Inc., 350 Md. 4, 710 A.2d 267, 276 (1998). In Maryland, actual malice means a "sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud." Id. (internal citation omitted). Although defendants contend that Robles did not plead sufficient facts to support a showing of actual malice, Robles alleges that "[t]he officers' conduct was wanton and malicious" and that the officers openly "laughed and joked" as they discussed the discomfort they were inflicting on him. The officers clearly appreciated the wrongfulness of their actions, as they attempted to disguise their voices while carrying out their plan and stayed out of sight when the Montgomery police arrived. Additionally, Rozar and DeBarros have freely admitted that their motive was unrelated to any legitimate law enforcement function but was instead a misguided attempt to get back at the Montgomery police officers for refusing to answer their call. Because these actions show actual malice on the part of Rozar and DeBarros, punitive damages against them were proper.
 
 VII.
 
 38
 In this unfortunate case, the district court struck a fortunate balance. While plaintiff sought to push the case for far more than it was worth, defendants seemed to believe that characterizing their actions as adolescent somehow relieved them of all responsibility for them. The district judge wisely let neither party have its way.
 
 
 39
 For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part, and remanded with directions to modify the judgment by eliminating the punitive damages award against the County.
 
 
 40
 
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 
 Notes:
 
 
 [1]
 Robles additionally contends that the court below erred in not granting his motion to alter judgment on the related state law claim. Because Article 26 of the Maryland Declaration of Rights and the Fourth Amendment of the U.S. Constitution parallel each other,Henderson v. Maryland, 89 Md.App. 19, 597 A.2d 486 (1991), the jury verdict for the defendants on this claim must stand.
 
 
 [2]
 Plaintiff would have us dispose of this issue by reference to the Supreme Court's recent ruling inHope v. Pelzer, ___ U.S. ___, 122 S.Ct. 2508, 153 L.Ed.2d 666, 2002 WL 1378412 (U.S.). In that case, the Court found an Eighth Amendment violation when a prison inmate was tied to a hitching post for extended periods of time. That case involved a much lengthier detention under painful and dangerous conditions amounting to cruel and unusual punishment. It is therefore not dispositive of this claim.